J-S04028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSHUA ADAM MARTIN, | |
| Appellant | No. 858 MDA 2014 |

Appeal from the Judgment of Sentence entered March 20, 2014,
in the Court of Common Pleas of Lancaster County,
Criminal Division, at No(s): CP-36-CR-0001422-2013

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED FEBRUARY 02, 2015**

Joshua Adam Martin ("Appellant") appeals from the judgment of sentence imposed after he pled guilty to one count of unlawful contact with a minor and one count of criminal use of a communication facility.[1]

The trial court summarized the factual background as follows:

> On May 16, 2013, the Attorney General of the Commonwealth of Pennsylvania filed a Criminal Information (No. 1422-2013) charging [Appellant] with four counts of Unlawful Contact with a Minor and one count of Criminal Use of a Communication Facility.  According to the Information, these offenses occurred between the dates of July 11, 2012 and February 13, 2013, at which time [Appellant] used a computer on several occasions to communicate with an undercover agent of the Pennsylvania Office of Attorney General who was posing as a 14-year-old female.  During those occasions, [Appellant] expressed a desire to engage in oral and vaginal intercourse with

_____

[1] 18 Pa.C.S.A. § 6318(a)(1) and § 7512(a).

*Retired Senior Judge appointed to Superior Court.

the minor. When [Appellant] subsequently arrived at an agreed upon location to meet with the minor, he was arrested and taken into custody.

Trial Court Opinion, 6/24/14, at 1 (footnote omitted).

Appellant entered his guilty plea on November 21, 2013.[2] Appellant was sentenced on March 20, 2014 to four (4) to ten (10) years of incarceration for unlawful contact with a minor, and a concurrent seven (7) years of probation for criminal use of a communication facility. Both sentences were "on the very low end of the standard range of the Sentencing Guidelines." Trial Court Opinion, 6/24/14, at 7; **see also**, N.T., 11/21/13, at 8.

On appeal, Appellant presents a single question for our review:

IN THE CONTEXT OF IMPOSING SENTENCE FOR OTHERWISE CONSENSUAL ORAL SEX ACTIVITY BETWEEN AN ADULT DEFENDANT AND A COMPLAINANT WHO IS 13, 14 OR 15 YEARS OF AGE, DOES PENNSYLVANIA'S ENTIRE SENTENCING SCHEME, INCLUDING THE SENTENCING GUIDELINES, VIOLATE DEFENDANT'S CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION OF THE LAWS, DUE PROCESS, AND THE RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT BECAUSE IT IMPOSES VASTLY GREATER SENTENCES FOR OTHERWISE CONSENSUAL ORAL SEX ACTIVITY THAN IT DOES FOR OTHERWISE CONSENSUAL VAGINAL SEX ACTIVITY?

Appellant's Brief at 5.

Before we reach the merits of Appellant's issue, we consider the trial court's statement that "[a]t no time did [Appellant] or his counsel raise the

---

[2] The three (3) remaining charges were nolle prossed.

constitutionality of the Sentencing Guidelines" prior to sentencing. Trial Court Opinion, 6/24/14, at 5, 11. Both the trial court and the Commonwealth assert that Appellant has waived his constitutional challenges because he failed to raise them prior to sentencing. Trial Court Opinion, 6/24/14, at 11; Commonwealth Brief at 5-7. Appellant counters that his issues involve the legality of his sentences, and therefore may be raised for the first time on appeal. Appellant's Brief at 9.

Our review of the certified record, including the notes of testimony from the November 21, 2013 guilty plea hearing, confirms that Appellant first raised his constitutional challenges after sentencing in a post-sentence motion and in his Pa.R.A.P. 1925(b) statement. We have held that "issues regarding the constitutionality of a statute can be waived." *Commonwealth v. Lawrence*, 99 A.3d 116, 122 (Pa. Super. 2014). However, a constitutional challenge may be non-waivable where it pertains to the legality of the sentence. *Id*. We explained:

> Through [previous] *en banc* cases, we have established the principle that the term illegal sentence is a term of art that our Courts apply narrowly, to a relatively small class of cases. This Court has consistently enunciated three distinct categories of legality of sentence claims as a baseline. These are (1) claims that the sentence fell outside of the legal parameters pre-scribed by the applicable statute; (2) claims involving merger/double jeopardy; and (3) claims implicating the rule in *Apprendi v. New Jersey*, 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (2000). This Court has also held that claims pertaining to the Eighth Amendment's Cruel and Unusual Punishment Clause also pertain to the legality of the sentence and cannot be waived.

- 3 -

*Id*. (citations omitted).

Given that one of Appellant's constitutional challenges invokes the Eighth Amendment prohibition against cruel and unusual punishment, we decline to dispose of this appeal on the basis of waiver.

Appellant summarized the essence of his constitutional challenges:

[T]he statutory scheme in Pennsylvania creates highly disparate sentences based on the type of sex act in the context of otherwise consensual sexual activity between an adult defendant and a complainant who is 13, 14, or 15 years of age.

Appellant's Brief at 11 (underline in original text).

The trial court refined Appellant's issue:

Essentially, [Appellant] argues that designating oral intercourse under the crime of IDSI as a more serious crime than vaginal intercourse under Statutory Sexual Assault is unconstitutional under the Federal and State Due Process Clauses, the Pennsylvania and Federal Equal Protection Clauses, and the Federal and State prohibitions against cruel and unusual punishment.

Trial Court Opinion, 6/24/14, at 8.

Upon review, we find Appellant's claim to be specious. We note that in the absence of waiver, the trial exercised forbearance in addressing the merits of Appellant's constitutional challenges. The trial court aptly commented:

[T]here is no substantive due process right for an adult to engage in deviate sexual intercourse with an adolescent under 16 years of age, …

\*\*\*

> [Appellant's] morals and standards do not control the constitutionality of a policy judgment made by the Sentencing Commission. While [Appellant] may believe that engaging in oral intercourse with a young adolescent girl is less serious than engaging in vaginal intercourse, thus deserving of a lesser or equal [offense gravity score], the Sentencing Commission clearly did not agree. Despite [Appellant's] argument, the wisdom, accuracy, or agreeability of a policy decision does not control the constitutionality of an otherwise valid policy decision.

Trial Court Opinion, 6/24/14, at 16.

Moreover, the entirety of the trial court opinion, authored by the Honorable Donald R. Totaro on June 24, 2014, thoroughly disposes of Appellant's claims, such that further analysis by this Court is not necessary. We therefore adopt Judge Totaro's opinion as our own in rejecting Appellant's constitutional claims and affirming his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA  :
                       :
      vs.                :     No.:   1422-2013
                       :
JOSHUA ADAM MARTIN       :

**PA R.A.P. 1925 OPINION**

BY TOTARO, J.

On May 16, 2013, the Attorney General of the Commonwealth of Pennsylvania filed a

Criminal Information (No. 1422-2013) charging Joshua Adam Martin ("Defendant") with four

counts of Unlawful Contact With a Minor[1] and one count of Criminal Use of a Communication

Facility.[2] According to the Information, these offenses occurred between the dates of July 11,

2012 and February 13, 2013, at which time Defendant used a computer on several occasions to

communicate with an undercover agent of the Pennsylvania Office of Attorney General who was

posing as a 14-year-old female. During those occasions, Defendant expressed a desire to engage

in oral and vaginal intercourse with the minor. When Defendant subsequently arrived at an

agreed upon location to meet with the minor, he was arrested and taken into custody.

More specifically, Count 1 of the Criminal Information charged Defendant with Unlawful

Contact With a Minor, for expressing a desire to engage in oral intercourse with the minor as

prohibited under 18 Pa. C.S.A. §3123(a)(7), relating to Involuntary Deviate Sexual Intercourse

("IDSI"). The grading for this offense is a felony of the first degree, the Offense Gravity Score

---

[1] 18 Pa. C.S.A. § 6318(a)(1)

[2] 18 Pa. C.S.A. § 7512(a)

("OGS") is "12," and the standard range guideline sentence with no Prior Record Score ("PRS") is a minimum of 48 months to 66 months incarceration.

Count 2 charged Defendant with Unlawful Contact With a Minor, for expressing a desire to engage in vaginal intercourse with the minor as prohibited under 18 Pa. C.S.A. §3122.1, relating to Statutory Sexual Assault. The grading for this offense was charged as a felony of the second degree,[3] the OGS is "9," and the standard range guideline sentence with no PRS is a minimum of 12 months to 24 months incarceration.

Count 3 charged Defendant with Unlawful Contact With a Minor, for expressing a desire to digitally penetrate the vagina of the minor as prohibited under 18 Pa. C.S.A. §3125(a)(8), relating to Aggravated Indecent Assault. The grading for this offense is listed as a felony of the second degree, the OGS is "10," and the standard range guideline sentence with no PRS is a minimum of 22 months to 36 months incarceration.

Count 4 charged Defendant with Unlawful Contact With a Minor, for sending an image of his exposed penis for the minor to view as prohibited under 18 Pa. C.S.A. §5903(c), relating to Obscene and Other Sexual Materials and Performances. The grading of this offense was charged as a felony of the second degree,[4] the OGS is "5," and the standard range guideline sentence with no PRS is a minimum of Restorative Sanctions ("RS") to 9 months incarceration.

---

[3] Because Defendant was 31 years old when the offenses occurred and the undercover agent was posing as a 14-year-old female, Defendant was 11 or more years older than the purported victim. Thus, the proper grading for this offense would be a felony of the first degree. 18 Pa. C.S.A. §3122.1(b).

[4] Pursuant to 18 Pa. C.S.A. §5903(h)(2), any person who disseminates explicit sexual materials to a minor is guilty of a felony of the third degree if that offender has no prior convictions under subsection (c) or (d). Because Defendant has no prior record, this should be graded as a felony of the third degree.

2

Count 5 charged Defendant with Criminal Use of a Communication Facility for using a computer with internet access to make contact with an undercover agent posing as a 14-year-old minor, expressing a desire to engage in sexual activity with the minor, and transmitting images of his penis for the minor to view. The grading of this offense is a felony of the third degree, the OGS is "5," and the standard range guideline sentence with no PRS is a minimum of RS to 9 months incarceration.

On November 21, 2013, Defendant appeared before the Honorable Judge Louis J. Farina to enter an open guilty plea to Count 1 of the Criminal Information, charging him with Unlawful Contact With a Minor. This count was based upon Defendant's conduct in contacting a law enforcement officer who had assumed the identity of a 14-year-old minor, for the purpose of engaging in oral intercourse with the minor. (Notes of Testimony at 2) (hereinafter "N.T."). This sexual activity is prohibited under 18 Pa. C.S.A. §3123(a)(7), relating to IDSI.[5] Defendant also entered an open guilty plea to Count 5.[6] *Id.*

During the guilty plea proceeding, Judge Farina reviewed with Defendant the maximum penalties he could receive: 27 years incarceration and fines totaling $40,000. (N.T. at 2-3). When asked whether any promises had been made to him as to the sentence he would receive, Defendant replied "No." *Id.* at 6-7. The Court then asked Defendant whether he was aware that under the sentencing guidelines the standard range called for a sentence of 4 to 8 years in jail. *Id.*

---

[5] For purposes of the present case, "[d]eviate sexual intercourse" is defined as "[s]exual intercourse per os or per anus between human beings . . . ." 18 Pa. C.S.A. § 3101. "Our courts have viewed the phrase 'intercourse per os or per anus' as describing oral and anal sex." *Commonwealth v. Kelley*, 801 A.2d 551, 555 (Pa. 2002).

[6] The Commonwealth agreed to nolle pros Counts 2, 3, and 4 of the Criminal Information at the time of sentencing. (N.T. at 3).

at 7. Defendant replied "Yes, Your Honor."[7] *Id.* Judge Farina then made it very clear to Defendant that "[t]he judge is not restricted by that, he could go up or he could go down, but you are most likely looking at State time; do you understand that?" *Id.* Again, Defendant responded by saying "Yes, Your Honor." *Id.* Later, while discussing with Defendant his appellate rights, the following occurred:

> THE COURT: You can raise that the sentence was an abuse of discretion, not justifiable under the law. Now, The [sic] judge has got a lot of room in that regard, but you don't know that until your sentence. But, generally speaking, they seldom get reversed because the judge is well aware of what the restrictions are on it. I mean, four to eight -- you are not going to touch four to eight. If that's what you get, I mean, that's the bottom of the standard range. All right?
>
> DEFENDANT: Yes.

(N.T. at 8-9).

After reviewing the Sentencing Guidelines Worksheet, being informed by the Court of the standard range of the Sentencing Guidelines for the offense for which Defendant was pleading guilty, and being advised by the Court that a sentence of 4 to 8 years incarceration would likely withstand any appeal, Defendant expressed to the Court that he still wished to plead guilty. (N.T. at 9-10). At no time did Defendant or his counsel hesitate about pleading guilty, they did not challenge the Sentencing Guidelines, nor did they question the likely sentence of 4 to 8 years incarceration in a State Correctional Institution that was referenced by Judge Farina.

---

[7] At the time of the guilty plea hearing, the Court was provided with a Sentencing Guideline Worksheet listing Defendant's name and the specific charges for which he was pleading guilty. *See* Sentencing Guidelines Worksheet. The Sentencing Guidelines Worksheet clearly reflected a standard range minimum sentence of between 48 months and 66 months incarceration for Count 1. *Id.* The signatures of Defendant and his counsel appear on that Sentencing Guidelines Worksheet. *Id.*

4

At the conclusion of the guilty plea hearing, Judge Farina accepted Defendant's guilty plea after finding it was knowing, voluntary and intelligent. (N.T. at 11). The Court then directed that a pre-sentence investigation be completed prior to imposition of sentence, along with an assessment by the Sexual Offenders Assessment Board to determine whether Defendant should be classified as a sexually violent predator. *Id.*

On March 20, 2014, Defendant appeared before this Court for sentencing before the Honorable Judge Donald R. Totaro.[8] At the start of the hearing, this Court specifically reviewed with Defendant the Sentencing Guidelines Worksheet that was submitted at the time of the guilty plea, which listed a standard range sentence of 48 months to 66 months incarceration. (Notes of Sentencing at 4) (hereinafter "N.S."). Defendant acknowledged reviewing the worksheet with his attorney prior to the guilty plea, and confirmed it was his signature on the form. *Id.* at 4-5. Defendant also stated he understood the information contained on the worksheet. *Id.* at 5.

When questioned, Defendant recalled that at the time of the guilty plea it was explained to him there was no agreement as to the sentence he would receive. (N.S. at 6). Furthermore, Defendant stated there were no promises made to him at any time. *Id.* Additionally, Defendant understood the sentence would be at the complete discretion of the Court. *Id.*

Prior to imposition of sentence, Defendant's counsel asked the Court to deviate below the standard range of the Sentencing Guidelines, because of Defendant's personal history, lack of prior record, and acceptance of responsibility. (N.S. at 12-15). Counsel further argued that no child was harmed, and it was questionable whether Defendant intended to actually carry out the act. *Id.* At no time did Counsel challenge the constitutionality of the Sentencing Guidelines.

---

[8] Judge Farina retired at the end of 2013, and this case was then reassigned to Judge Totaro.

5

In response, the Court noted it was clear from the pre-sentence report that Defendant engaged in predatory behavior by deliberately grooming an individual he thought to be a 14-year-old child for a sexual liaison.[9] (N.S. at 18-20, 25-26). Defendant engaged in this course of conduct for almost seven months, repeatedly initiating contact for the purpose of engaging in sexual activities. *Id.* at 25. While doing so, Defendant recognized his conduct was wrong and he could go to jail.[10] *Id.* at 19-21. Yet Defendant was prepared to act out on his urges when he drove to a designated location to meet with the child. Thus, the Court found that Defendant was a danger to the public, incarceration was warranted because a lesser sentence would depreciate the seriousness of the offense, and the statute for which Defendant was convicted was designed to prevent people like him from successfully abusing minor children. *Id.* at 19, 26.

For these reasons, and based upon all additional factors contained within the record, the Court imposed the following sentence: Count 1: four to ten years incarceration in the State

---

[9] According to text messages contained within the pre-sentence investigation report, Defendant replied "No. I dig younger girls" when he was asked by the purported victim whether it bothered him that he was communicating with a 14-year-old girl. (N.S. at 20). Defendant then sent a picture of his exposed penis to the agent whom he believed was the 14-year-old girl. *Id.* Further, during several communications between July 11, 2012 and the date of arrest on February 13, 2013, Defendant discussed engaging in sexual activities with the person he thought was a child. For example, in October 2012 Defendant wrote "I really need to meet you soon. That okay with you?" *Id.* In January 2013, Defendant asked if the child was ready to lose her virginity, while stating he wanted to sleep with her. *Id.* at 21. On February 12, 2013, one day before he went to the designated meeting location to meet with the purported child, Defendant wrote "I'm excited by the thought of you in my car." *Id.*

[10] Defendant sent several cautionary messages to the child where he acknowledged his conduct was wrong and he could go to jail if caught. (N.S. at 19). For example, in one communication Defendant wrote "[j]ust keep it to yourself. My wife can't find out. Your mom would have me arrested." *Id.* at 20. In October 2012, Defendant wrote "I'm sure your mom would call the cops on me." *Id.* On January 2, 2013, in response to the agent indicating her mom wasn't letting her on the computer, Defendant wrote "she's trying to keep you away from guys like me, haha." *Id.* at 20-21. On February 12, 2013, one day before his arrest, Defendant wrote "[s]till ready to get in my car with me, maybe tomorrow? I'm scared though. I could be arrested and charged with child rape or something like that." *Id.* at 21.

Correctional Institution and a fine of $300.00; Count 5: seven years probation, concurrent to the sentence on Count 1.[11] (N.S. at 22-27). Both sentences were on the very low end of the standard range of the Sentencing Guidelines. Defendant did not object to the sentence imposed, nor did he raise any constitutional challenge.

Thereafter, on March 31, 2014, Defendant's counsel filed a timely Post-Sentence Motion to Modify Sentence, asserting that the trial court erred in failing to deviate from the standard range of the Sentencing Guidelines when fashioning the sentence imposed. Additionally, counsel alleged the Sentencing Guidelines were inconsistent and irrational, thus depriving him of due process of law, equal protection of the law, and subjecting him to cruel and unusual punishment. In response, the Commonwealth filed an Answer requesting that the Court deny Defendant's Motion to Modify Sentence. On April 15, 2014, the Court entered an Order denying Defendant's Post-Sentence Motion to Modify Sentence.

On May 15, 2014, Defendant's new counsel, James J. Karl, Esquire, Chief Public Defender, timely filed a Notice of Appeal. On June 4, 2014, Mr. Karl filed a Statement of Errors Complained of on Appeal, alleging the Sentencing Guidelines violate Defendant's: (a) rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and under Article I, Section 1 of the Pennsylvania Constitution; (b) rights to Due Process of Law under the Fourteenth Amendment of the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution; and (c) his rights against cruel and unusual punishment under the

---

[11] The Court approved the Commonwealth's request for a nolle pros on Counts 2, 3, and 4. (N.S. at 27). Further, Defendant was not sentenced as a sexually violent predator. *Id.* However, as a Tier II offender, Defendant was notified of his responsibility to register with the Pennsylvania State Police for the next 25 years and verify his registration information in person semi-annually. *Id.* at 27-33.

7

Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13, of the Pennsylvania Constitution. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## DISCUSSION

In his Post-Sentence Motion and Statement of Errors Complained of on Appeal, Defendant challenges the constitutionality of Pennsylvania's legislative scheme which regulates criminal sexual activity by noting that the Sentencing Guidelines, 204 Pa. Code § 303.1, *et seq.*, treat the offense of IDSI, 18 Pa. C.S.A. § 3123(a)(7), a felony of the first degree, as a more serious crime than Statutory Sexual Assault, 18 Pa. C.S.A. § 3122.1(b), also a first degree felony.[12] Essentially, Defendant argues that designating oral intercourse under the crime of IDSI as a more serious crime than vaginal intercourse under Statutory Sexual Assault is unconstitutional under the Federal and State Due Process Clauses, the Pennsylvania and Federal Equal Protection Clauses, and the Federal and State prohibitions against cruel and unusual punishment.

Constitutional claims, even those involving a sentence, are waived if they are not raised and preserved at every level of the proceedings. *Commonwealth v. Wallace*, 533 A.2d 1051, 1053-54 (Pa. Super. 1987); *see also Commonwealth v. Walton*, 397 A.2d 1179, 1185 (Pa. 1979) (allegation that the lower court's construction of a restitution statute violated due process was

---

[12] As previously noted, Defendant pleaded guilty to the charge of Unlawful Contact with a Minor pursuant to 18 Pa. C.S.A. § 6318(a)(1), which incorporated the offense he intended to commit when he contacted a law enforcement officer posing as a minor. Defendant was not charged with the underlying sexual offenses. For ease of analysis, and since the crime of Unlawful Contact with a Minor takes on the grading and OGS of the underlying crimes pursuant to 18 Pa. C.S.A. § 6318(b)(1), the relevant underlying offenses of IDSI and Statutory Sexual Assault will be referred throughout this Opinion as the challenged crimes.

8

waived when not raised at the sentencing hearing); *Commonwealth v. Boone*, 354 A.2d 898, 904

(Pa. 1975) (claim that the imposition of a maximum as well as minimum sentence violated due

process was waived for failure to advance this argument at the sentencing proceedings).[13]

Through jurisprudence, a distinction has emerged between legal questions involving

sentencing and an illegal sentencing claim.[14] *Commonwealth v. Archer*, 722 A.2d 203, 209-10

(Pa. Super. 1998). Simply raising a legal question as to a sentence does not require an appellate

court to review the question as it would an illegal sentence claim. *Id.* at 210.[15]

In the present case, Defendant has not raised an illegal sentencing claim. Rather, he has

raised a legal question involving sentencing, which is a waivable claim. Specifically, Defendant

has raised a constitutional claim that must be raised and preserved at every level of the

proceedings. However, at no time did Defendant raise or preserve such a constitutional claim

during the guilty plea proceeding or at the sentencing hearing.

---

[13] In *Commonwealth v. Sessoms*, the Supreme Court indicated that an attack upon the constitutionality of the Sentencing Guidelines would be subject to appellate review only where the issue has been "properly preserved at all stages of adjudication up to and including any direct appeal." 532 A.2d 775, 782 n. 2 (Pa. 1987) (quoting *Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983)).

[14] Issues that go to the legality of a sentence are excepted from this general rule, they may never be waived solely on the basis of a procedural error, and they may properly be raised for the first time on appeal. *Commonwealth v. Wallace*, 533 A.2d 1051, 1053 (Pa. Super. 1987).

[15] Defendant has not challenged the grading of any of the offenses to which he pleaded guilty. Such a challenge would give rise to a legality of sentence claim and therefore could not be waived. *See Commonwealth v. Scarborough*, 89 A.3d 679, 685 (Pa. Super. 2014) ("a question as to the proper grading of an offense goes to the legality of the sentence and not the discretionary aspects"). Questions involving an application of the Sentencing Guidelines go to discretionary aspects of sentencing, and may be waived if not raised at the proper juncture. *Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa. Super. 1998). The improper utilization of the Sentencing Guidelines is an error of law, which is a legal question, but does not render the sentence illegal. *Id.* If every improper calculation of an OGS was held to implicate the legality of sentence, the Sentencing Guidelines would be given more weight than they were intended. *Id.* at 210. In the present case, Defendant's challenge to the assignment of OGS by the Sentencing Commission is at best a legal question, not one which renders the sentence illegal. Thus, Defendant's failure to raise this issue at the proper time renders the question waived.

On May 16, 2013, the Attorney General of the Commonwealth of Pennsylvania filed a Criminal Information charging Defendant with four counts of Unlawful Contact With a Minor and one count of Criminal Use of a Communication Facility, at which time Defendant and his counsel became immediately aware of the nature of the charges and of the OGS assigned to each offense. Nevertheless, Defendant did not raise a constitutional challenge to the statutory scheme as it related to the applicable Sentencing Guidelines.

On November 21, 2013, Defendant appeared before the Honorable Judge Louis J. Farina and entered into an open guilty plea to Count 1 of the Criminal Information, for contacting a law enforcement officer who assumed the identity of a minor to engage in oral intercourse. During the guilty plea proceeding, Judge Farina reviewed with Defendant the Sentencing Guidelines, which included a standard range minimum sentence of at least four years in jail. The Sentencing Guidelines Worksheet signed by Defendant and his counsel also reflected a standard range minimum sentence of 48 months to 66 months incarceration. Moreover, Defendant was told an appeal would likely be unsuccessful if he received a minimum sentence of four years. Nevertheless, at no point during this hearing did Defendant or his counsel ever challenge the constitutionality of the Sentencing Guidelines or raise a question about the OGS assigned to the relevant offenses. Rather, Defendant chose to proceed with a guilty plea.

On March 20, 2014, Defendant appeared before this Court for sentencing, at which time the Court reviewed with Defendant the Sentencing Guidelines Worksheet submitted at the time of the guilty plea. Defendant acknowledged reviewing the worksheet with his attorney prior to the guilty plea, he confirmed it was his signature on the form, and he stated he understood the information contained on the worksheet. Prior to imposition of sentence, Defendant's counsel

10

asked the Court to deviate below the standard range of the Sentencing Guidelines, primarily because of Defendant's personal history and acceptance of responsibility. However, at no time did Defendant or his counsel raise the constitutionality of the Sentencing Guidelines as an issue during the sentencing hearing. Therefore, because Defendant failed to raise or preserve this challenge at all applicable stages of the proceedings, his claims should be deemed waived.

Assuming, *arguendo*, Defendant has not waived his claims, the Court will address the merits of each issue.

"In conducting [this] review, [the Court is] guided by the principle that acts passed by the General Assembly are strongly presumed to be constitutional." *Commonwealth v. Neiman*, 84 A.3d 603, 611 (Pa. 2013) (quoting *Pennsylvania State Ass'n of Jury Comm'rs v. Commonwealth*, 64 A.3d 611, 618 (Pa.2013)) (internal quotation marks omitted). Additionally:

> When evaluating challenges to a statute - whether those challenges are based on vagueness . . . or any other considerations - [this court] must also keep in mind that there is a strong presumption that legislation is constitutional. A party challenging legislation bears a heavy burden to prove otherwise. Accordingly, this Court will strike the statute in question only if Appellant convinces us that it clearly, palpably and plainly violates the federal or state constitutions.

*Commonwealth v. Orie*, 88 A.3d 983, 1024 (Pa. Super. 2014) (quoting *Commonwealth v. Thur*, 906 A.2d 552, 560-61 (Pa. Super. 2006)).

The Pennsylvania Commission on Sentencing was established as an agency of the General Assembly. 42 Pa. C.S.A. §§ 2151.2.[16] Pursuant to rules and regulations, the Sentencing

---

[16] The Pennsylvania Commission on Sentencing was created in 1978, in part for the purpose of promulgating guidelines to be considered by courts in imposing sentences. *Commonwealth v. Sessoms*, 532 A.2d 775, 776 (Pa. 1987). Enabling legislation contemplated that the Commission would adopt Sentencing Guidelines after publication in the Pennsylvania Bulletin and an opportunity for public comment. *Id.* In addressing the authority of the Sentencing Commission to enact guidelines, *Sessoms* stated:

11

Commission shall have the power to, *inter alia*, adopt guidelines for sentencing within the limits established by law. 42 Pa. C.S.A. § 2154. Subject to gubernatorial review pursuant to Article III, Section 9 of the Pennsylvania Constitution, the General Assembly may by concurrent resolution reject in their entirety any guidelines adopted by the commission within 90 days of their publication in the Pennsylvania Bulletin. 42 Pa. C.S.A. § 2155(b). Sentencing Guidelines adopted by the commission shall become effective 90 days after publication in the Pennsylvania Bulleting unless disapproved pursuant to subsection (b) . . . . 42 Pa. C.S.A. § 2155(c).

Defendant's first constitutional challenge to the Sentencing Guidelines is made under the Equal Protection Clause of the United States and Pennsylvania Constitutions.[17] According to Defendant, a legislative scheme that punishes more severely an individual who engages in oral intercourse with a minor than one who engages in vaginal intercourse with a minor violates his rights to equal protection.

The Equal Protection Clause requires similarly-situated individuals to be treated alike under the law. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). However, "[t]he Constitution does not

---

The legislature with the governor's approval has deemed it proper that the findings of such a body, assembled to assist it in developing and overseeing a sound sentencing system, be given practical application in individual cases as well. We may say that in directing courts to consider these guidelines, just as they must consider a number of listed though non-exclusive factors in imposing probation, the legislature has done no more than direct that the courts take notice of the Commission's work. Only in this limited way can the work-product of the Commission, a legislative agency, be given effect beyond the confines of the General Assembly and at the same time avoid invalidation on constitutional grounds.

*Id.* at 781 (sentence vacated because previous Sentencing Guidelines were adopted with the lack of required presentment to the Governor and thus were deemed unconstitutional).

[17] Equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution. *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000).

12

require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)) (internal quotation marks omitted). It is inherent and unavoidable in the legislative process that lines creating distinctions between citizens will be formed. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976).

Varying levels of scrutiny are applied to a challenged statute based on the nature of the group distinction involved. *See, e.g. City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (racial classifications are subject to strict scrutiny); *Mississippi University for Women v. Hogan*, 458 U.S. 718 (1982) (gender classifications receive intermediate scrutiny). Absent a classification based on a suspect class such as gender or race, a state law enjoys a presumption of validity and will only be struck down if the challenger can prove it bears no rational relationship to any legitimate government objective. *Parham v. Hughes*, 441 U.S. 347, 351 (1979).[18]

Presently, neither 18 Pa. C.S.A. § 3122.1 nor 18 Pa. C.S.A. § 3123(a)(7) contain any distinctions based on gender or race. Rather, there are only two characteristics referenced in these statutes, age and marital status, with only age referenced in the Sentencing Guidelines.[19] To the extent Defendant is challenging the legislative scheme on the basis of different guidelines for different types of sexual activity, Defendant's claim must fail, as the Equal Protection Clause concerns classifications of people and not the sentences imposed for particular acts where no

---

[18] In *Commonwealth v. Scarborough*, 89 A.3d 679, 685-88 (Pa. Super. 2014), the Superior Court of Pennsylvania recently held that a geographic classification based on that defendant's location in the City of Philadelphia, which resulted in defendant being charged with a third degree felony for carrying a concealed firearm without a license, did not create a suspect classification and did not violate due process nor equal protection rights even though such an offense is graded as a first degree misdemeanor if committed anywhere else in Pennsylvania. Although defendant argued certain fundamental rights were implicated, in an attempt to garner strict scrutiny, the Court applied a rational basis review. *Id.* at 686.

[19] IDSI and Statutory Sexual Assault have been deemed constitutional under the equal protection classifications of both age and marital status. *Commonwealth v. Albert*, 758 A.2d 1149, 1155 (Pa. 2000).

fundamental right is implicated. *See Probst v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 849 A.2d 1135, 1143 (Pa. 2004) (like *persons* in like circumstances will be treated similarly).[20]

Defendant's next constitutional challenge to the Sentencing Guidelines is made under the Fourteenth Amendment Due Process Clause of the United States Constitution, which provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.[21]

The constitutional guarantee of Due Process protects more than simply fair process, but provides for the protection of certain substantive liberty interests as well. *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). This rule specifically protects fundamental rights and liberties that are objectively and deeply rooted in the history and tradition of our country. *Id.* Any governmental intrusion into a fundamental right is required to be narrowly tailored to achieve a compelling state interest. *Id.* When no fundamental right has been implicated, a law need only be rationally related to some legitimate state interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996). Ordinarily, a law will be upheld if it advances a legitimate state interest even when "the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Id.* at 632.

---

[20] Courts will only create a new suspect classification when the group is "subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (quoting *San Antonio School District v. Rodriguez*, 411 U.S. 1, 28 (1973)). Clearly we are not presented with such a situation in the present case.

[21] Defendant also claims his right to Due Process of Law was violated under the Pennsylvania Constitution. Due Process claims under the United States and Pennsylvania Constitutions are analyzed under the same standard. *Commonwealth v. Snyder*, 713 A.2d 596, 602 (Pa. 1998).

14

A state has a compelling interest in safeguarding the physical and psychological well-being of children. *New York v. Ferber*, 458 U.S. 747, 757 (1982). "A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944). This compelling interest justifies a broad range of legislation aimed at protecting the well-being of children, even when constitutionally protected rights are implicated. *Ferber*, 458 U.S. at 757. It rests within the power of the individual states to enact and enforce their own criminal code as they see fit. *Knapp v. Schweitzer*, 357 U.S. 371, 378 (1958). The "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* To determine whether a regulation is a valid exercise of the state's police power, the question is whether it benefits the public generally. *Commonwealth v. Bonadio*, 415 A.2d 47, 49 (1980). To that end, the state clearly has a proper role "in protecting minors from being sexually used by adults." *Id.*

In the present case, Defendant pleaded guilty to the crime of Unlawful Contact With a Minor, for soliciting an individual he believed to be 14 years of age to engage in oral sexual intercourse.[22] By comparison, the legislature enacted the crime of Statutory Sexual Assault, which prohibits vaginal intercourse between an adult and a minor under 16 years old, when the adult is at least 4 years older than the victim. 18 Pa. C.S.A. § 3122.1. Under the Sentencing Guidelines, the OGS for IDSI involving oral intercourse is "12," while the OGS for Statutory Sexual Assault involving vaginal intercourse is "9". 204 Pa. Code § 303.16a. Defendant claims a legislative scheme that punishes an individual who engages in oral intercourse with a minor

---

[22] There is no substantive due process right for an adult to engage in deviate sexual intercourse with an adolescent under 16 years of age. *See Commonwealth v. Gautieri*, 636 A.2d 1153, 1156 (Pa. Super. 1994).

15

more severely than one who engages in vaginal intercourse with a minor in some way violates his rights to Due Process of Law.

As noted, there is no substantive due process right for an adult to engage in deviate sexual intercourse with an adolescent under 16 years of age, and when no fundamental right has been implicated a law need only be rationally related to some legitimate state interest. *See Romer, supra.* Thus, to succeed on his due process claim, Defendant must successfully argue that the Sentencing Guidelines and the difference in OGS between the two offenses are not rationally related to serving any legitimate policy judgment of the Sentencing Commission.

Defendant's morals and standards do not control the constitutionality of a policy judgment made by the Sentencing Commission. While Defendant may believe that engaging in oral intercourse with a young adolescent girl is less serious than engaging in vaginal intercourse, thus deserving of a lesser or equal OGS, the Sentencing Commission clearly did not agree. Despite Defendant's argument, the wisdom, accuracy, or agreeability of a policy decision does not control the constitutionality of an otherwise valid policy decision. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49 (1973) (a state may constitutionally make a policy decision based on non-conclusory data). As such, the legislative scheme and Sentencing Guidelines undoubtedly benefit the public at large. Moreover, they are rationally related to a compelling state interest in protecting minors from sexual exploitation by adults. Therefore, Defendant's claim in this regard must fail.

In Defendant's final challenge, Defendant claims a legislative scheme that punishes an individual who engages in oral intercourse with a minor more severely than one who engages in vaginal intercourse with a minor violates his rights under the prohibition against cruel and

16

unusual punishment stemming from the Eighth Amendment to the United States Constitution and Article I, Section 13, of the Pennsylvania Constitution.[23]

"Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees." *Chapman v. United States*, 500 U.S. 453, 465 (1991). Following a valid conviction, a court may impose whatever punishment is authorized by law so long as it is not cruel and unusual. *Id.* The mark of what constitutes cruel and unusual punishment is not a static line, but one that must comport with "evolving standards of decency that mark the progress of a maturing society." *Hall v. Florida*, 2014 WL 2178332 (U.S. 2014) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Punishment may be justified under one or more of three primary rationales: rehabilitation, deterrence, and retribution. *Kennedy v. Louisiana*, 554 U.S. 407, 420 (2008).

Presently, there is nothing cruel or unusual about a recommended minimum term of 48 to 66 months incarceration, pursuant to the Sentencing Guidelines, for conduct involving a 31-year-old adult individual who contacts a minor child 14 years of age for the purpose of engaging in oral intercourse with the child. Such a sentence is not outlandish, nor disproportionate to the crime committed. Furthermore, the sentence imposed will allow for Defendant to obtain counseling, while deterring him and others from committing the same or similar crimes. Thus, the sentence serves the interests of rehabilitation, deterrence, and retribution. The fact that Defendant would likely receive a lesser term of incarceration upon conviction for a different

---

[23] As with other constitutional provisions discussed herein, the Pennsylvania prohibition on cruel and unusual punishment has been held to provide no greater rights than those stemming from the United States Constitution. *Commonwealth v. Elia*, 83 A.3d 254, 267 (Pa. Super. 2013).

17

crime is simply irrelevant to a constitutional challenge under the Eighth Amendment.

Consequently, the legislative scheme and Sentencing Guidelines do not impose cruel and unusual punishment, and their constitutionality should be upheld.

For the aforementioned reasons, Defendant's appeal should be dismissed and the judgment of sentence affirmed.

BY THE COURT:

_____June 24, 2014_____

DATE

_____

DONALD R. TOTARO, JUDGE

ATTEST:

cc:    Christopher J. Jones, Esquire, Senior Deputy Attorney General
James J. Karl, Esquire, Chief Public Defender, Attorney for Defendant

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

18

Circulated 01/07/2015 03:37 PM