**COMMONWEALTH of Pennsylvania**

v.

**Basil SCARBOROUGH, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 12, 2013.

Filed April 7, 2014.

Peter Rosalsky, Public Defender, Philadelphia, for appellant.

Suzan E. Willcox, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., WECHT and MUSMANNO, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Appellant appeals the judgment of sentence entered June 4, 2012. Finding no error, we affirm.

The trial court accurately summarized the facts underlying the issues on appeal in its opinion:

Philadelphia Police Officer Jayson Troccoli testified that on [ ] December 6th, 2011, around 10:13 a.m. he was on bicycle patrol with Officer Anthony Caffie in the area of 1800 South 22nd Street in Philadelphia. The area is known for high crime, shootings, and narcotics arrests. The officers observed the defendant heading southbound, toward them, on the 1800 block of 22nd Street. The defendant was riding a bicycle and talking on a cellular phone. The officers stopped the defendant in order to issue him a citation for using the phone while operating a vehicle, in violation of a City of Philadelphia ordinance, Phila. Code § 12–1132(3). N.T. April 19, 2012, pp. 5–8.

When asked, the defendant hung up his phone and placed it in his left jacket pocket. The officers also asked for his identification. The defendant began to behave nervously, and put his hand in his right jacket pocket but did not withdraw it. The officers reiterated their request for identification, and asked the defendant to remove his hand from his right pocket. The defendant looked around and appeared extremely nervous. Upon being asked a second time, he removed his hand from his right pocket. *Id.* at pp. 9–11.

The officers patted down the defendant's pockets for their safety, and Officer Caffie told Officer Troccoli that he felt a hard object. The defendant spontaneously reported that "it's only a cap gun." Officer Troccoli handcuffed the defendant's hands behind his back and removed a small silver revolver from the jacket pocket. *Id.* The weapon was a .22 revolver with four rounds loaded. According to Officer Troccoli, he felt at risk because of the defendant's apparent nervousness, his looking around, and his refusal upon being asked the first time to remove his hand from his right pocket, combined with the established dangerousness of the area, which had been host to several shootings. *Id.* at 22.

Trial court opinion, 8/20/12 at 2–3.

On February 13, 2012, appellant filed a pre-trial motion to suppress the evidence against him. On April 19, 2012, the court held an evidentiary hearing and then denied the motion. The case immediately proceeded to a bench trial where appellant was found guilty of firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia, 18 Pa.C.S.A. §§ 6106 and 6108, respectively. On June 4, 2012, appellant was sentenced to five years' probation at each count, to be served concurrently. This timely appeal followed.

 Appellant raises three issues on appeal:

1. Was not appellant subject to an unlawful *Terry* "frisk" because police lacked reasonable suspicion that appellant was armed and presently dangerous?

2. Was not the Trial Court's felony gradation of Section 6106 of the Pennsylvania Uniform Firearms Act of 1995 violative of federal/state due process and equal protection constitutional guarantees in that this offense was graded as a third degree felony because it occurred in Philadelphia County, but if it had occurred in any other county in Pennsylvania it would have been graded only as a first degree misdemeanor?

3. Should not appellant's Supplemental Statement Of Errors Complained Of On Appeal be deemed to have been timely filed?

Appellant's brief at 2. We will resolve these issues in the order presented.

In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as it remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Weaver,* 76 A.3d 562, 565 (Pa.Super.2013), *appeal granted,* —— Pa. ——, 86 A.3d 862 (2014), quoting *Commonwealth v. Brown,* 64 A.3d 1101, 1104 (Pa.Super.2013), *appeal denied,* —— Pa. ——, 79 A.3d 1096 (2013).

■ There is no dispute between the parties that the frisk at issue constituted an investigative detention in the nature of a protective weapons search which is governed by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and requires that police have reasonable suspicion either that criminal activity was afoot or that appellant was armed and dangerous to them:

It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for

weapons. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

*Commonwealth v. Clemens,* 66 A.3d 373, 381 (Pa.Super.2013), quoting *Commonwealth v. Stevenson,* 560 Pa. 345, 744 A.2d 1261, 1264–1265 (2000).

■ Reasonable suspicion is determined by the totality of the circumstances. *Id.* As such, each case is fact-specific, but a number of common circumstances have been identified; and where a sufficient number of them coalesce, reasonable suspicion will be found. Recently, in *Commonwealth v. Buchert,* 68 A.3d 911 (Pa.Super.2013), *appeal denied,* —— Pa. ——, 83 A.3d 413 (2014), this court found that the police acted with reasonable suspicion during a night time traffic stop. Police initially stopped the vehicle for a broken tail light. *Buchert,* 68 A.3d at 912–913. As police approached the vehicle, the defendant could be seen making furtive movements under the car seat, and he appeared very nervous after exiting the vehicle. *Id.* The *Buchert* court found that the frisk of the defendant and a search of the area of the car where he was sitting was valid. Thus, the *Buchert* court found reasonable suspicion based upon 1) night time stop; 2) furtive movements; and 3) extreme nervousness.

A similar set of circumstances obtains instantly. First, we note that the initial stop itself was absolutely justified as in *Buchert* as the police witnessed appellant committing a violation of the law. Here, appellant was stopped in a high crime area. This factor enhances the danger

that police may encounter an armed subject in a fashion similar to, but greater than, a night time stop. Appellant reached into his right hand jacket pocket and kept it there even after police initially directed him to remove it. This is not only tantamount to the furtive movements described in *Buchert,* but is actually more alarming because it suggests that the suspect may have a weapon on his person rather than merely hidden in the vehicle. Finally, as in *Buchert,* appellant appeared extremely nervous.

We also note the fact situation recited in *Commonwealth v. Hall,* 713 A.2d 650 (Pa.Super.1998), *reversed on other grounds,* 565 Pa. 92, 771 A.2d 1232 (2001):

> Two Reading police officers, patrolling in their cruiser, saw defendant and a companion conversing in an alley near a café. The police parked their vehicle, the conversants broke up, and appellant approached the police car while getting his I.D. out of his wallet and asked "Is everything all right, officer?" After a brief exchange, the officer removed from his vehicle and noticed Hall had his hands in his pocket. He asked if he was armed and Hall said he was not. Hall was asked to take his hands out of his pocket, but only removed his left hand. As the officer came to him, Hall pivoted with his hand in his pocket. After being asked again to remove his hand, he did, but became confrontational and stated that he would not be searched. The officer replied that he would not search him, but only pat him down for weapons.

*Hall,* 713 A.2d at 652–653.

The *Hall* court found that "when Hall approached with his hand thrust in his pocket and refused to remove it, the encounter escalated into a situation where the totality of circumstances involved a reasonable suspicion and justified a detention to stop and frisk." *Hall,* 713 A.2d at 653. Thus, in *Hall,* the single factor of the defendant keeping his hand in his pocket after being asked to remove it escalated the encounter into one of reasonable suspicion. Certainly, not only is that same factor present here, but as we have discussed, there are additional factors. *See also Commonwealth v. Zhahir,* 561 Pa. 545, 555, 751 A.2d 1153, 1158 (2000). We find that under these circumstances, the police had the right to frisk appellant.[1]

In his second argument, appellant argues that the interplay of Sections 6106 and 6108 of the Uniform Firearms Act work to violate his constitutional rights of due process and equal protection. We begin our analysis by examining claims by the Commonwealth that appellant has waived this issue and that appellant's issue may not be addressed because it goes to the discretionary aspects of sentence and appellant has failed to include in his brief a concise statement of reasons relied upon for allowance of appeal. We find that neither argument has merit.

█ We reject the Commonwealth's claim that appellant has waived this argument by not raising it below. Appellant's counsel was clearly raising this issue with the court at sentencing. (Notes of testimony, 6/4/12 at 3–7.) We also disagree with the Commonwealth's assertion that appellant's argument goes to the discre-

---

1. As for the frisk itself, the frisking officer announced to his partner that he felt a hard object. Ordinarily, to justify further entry into the pocket itself the frisking officer would need to believe, and the testimony at the suppression hearing would need to reflect, that what he felt was a weapon. Such was not necessary below because as soon as the frisking officer made his announcement, appellant spontaneously admitted that he was carrying some form of gun.

tionary aspects of his sentence rather than the legality of the sentence. The resolution of this issue will determine whether appellant's Section 6106 conviction will be graded as a third degree felony or a first degree misdemeanor. This court has previously held that a question as to the proper grading of an offense goes to the legality of the sentence and not the discretionary aspects.[2] *Commonwealth v. Sanchez*, 848 A.2d 977, 986 (Pa.Super.2004). Thus, appellant's brief need not present a concise statement for allowing an appeal of the discretionary aspects of his sentence. We now return to the merits of appellant's second issue.

The grading of a conviction under Section 6106 differs under certain circumstances:

**(a) Offense defined.—**

　　(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

　　(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode

or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a).

■■■ In appellant's case, his simultaneous violation of carrying a firearm on the streets of Philadelphia was the "other criminal violation" that prevented him from being charged under Section 6106 as a first degree misdemeanor and instead being charged as a third degree felony.[3] According to appellant, the result is that his violation under Section 6106 would be a first degree misdemeanor if committed anywhere else in Pennsylvania except Philadelphia, and that such a geographical distinction violates his due process and equal protection rights. We disagree.

Initially, we note that appellant has constructed his argument as though Section 6106 is the constitutionally infirm statute. We disagree with that construction. It is actually Section 6108 that is the statute that triggers the third degree felony status of Section 6106 when that offense is committed in Philadelphia. Nonetheless, this is ultimately of no moment because the constitutionality of either statute as to due process and equal protection would require the same level of review.

■■■■ "Where statutes are challenged as violating the constitutional protections to equal protection and/or due process, a court must first determine the

2. Ironically, appellant cannot raise the legality of his sentence because appellant's sentence, five years' probation, is within the statutory maximum of a first degree misdemeanor as well as a third degree felony. *See* 18 Pa.C.S.A. §§ 1104(1) and 1103(3), respectively. Nonetheless, appellant may raise his constitutional issue which we find was preserved.

3. No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
　(1) such person is licensed to carry a firearm; or
　(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).
18 Pa.C.S.A. § 6108.

appropriate degree of scrutiny which must be applied." *Commonwealth v. Spease,* 911 A.2d 952, 956 (Pa.Super.2006), *appeal denied,* 603 Pa. 681, 982 A.2d 510 (2009).

In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment, U.S. Const., Amdt. 14, § 1, we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. Classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.

*Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

The class created by Section 6108, "persons located in Philadelphia," is not based on race, national origin, sex, or illegitimacy. The right at issue under Section 6106, "the right to carry a concealed weapon," and the right at issue under Section 6108, "the right to carry a firearm on the streets of Philadelphia without a license," are not fundamental rights. They manifestly do not rise to the protection afforded by the Second Amendment's general guarantee of the right to keep and bear arms. Moreover, appellant's attempt to cast other fundamental rights, such as the right to vote, into the ambit of these statutes is unconvincing; while conviction under these statutes may lead to a ban on the right to vote just as conviction under many other criminal statutes, these statutes simply do not limit the right to vote in and of themselves, and appellant cannot garner strict scrutiny review by asserting a potential extended effect of conviction under these statutes. Clearly, the nature of our review as to these statutes must be rational basis.

Given a rational basis review, we find that both statutes serve a legitimate state interest. As the statistics contained in the Commonwealth's brief reflect, it is no secret that the level of gun violence in Philadelphia is staggeringly disproportionate to any other area of Pennsylvania. This court has previously noted Philadelphia's problem:

> The four years preceding the formation of the Philadelphia Gun Court were years of intense violence in Philadelphia: from 2000 to 2004, the city experienced more than 300 murders per year. *See Murders on rise in Philadelphia,* USA Today, December 12, 2005, available at http://usatoday.com/news/nation/2005–12–04–murders–philadelphia–x.htm. (last visited September 8, 2010). Philadelphia's murder rate in 2004, of 22.4 per 100,000 residents, was "the highest of the nation's 10 largest cities and rank[ed] third among the 25 largest, behind Baltimore and Detroit." *Id.* Eighty percent of the murders in Philadelphia were shooting deaths, ten percent higher than the national average. *See id.*

*Commonwealth v. Wilson,* 11 A.3d 519, 522 (Pa.Super.2010), *order vacated in part,* —— Pa. ——, 67 A.3d 736 (2013).

Section 6108 rationally addresses gun violence in Philadelphia. Throughout the Commonwealth of Pennsylvania, a license is necessary only if carrying a concealed firearm; openly carried firearms do not require a license. However, in Philadelphia a firearm carried openly requires a license. *See Commonwealth v. Hawkins,* 547 Pa. 652, 657 n. 4, 692 A.2d 1068, 1071 n. 4 (1997). Clearly the purpose of the Legislature in enacting this prohibition is twofold. First, as the most populated city in the Commonwealth with a correspondingly high crime rate, the possession of a

weapon on a city street, particularly the brandishing of a weapon, can invoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers. Second, a coordinate purpose is to aid in the efforts of law enforcement in the protection of the public; in Philadelphia, the police are empowered to arrest an individual for overtly carrying a firearm without first determining if it is licensed or operable. *See Commonwealth v. Taggart,* 997 A.2d 1189, 1196–1197 (Pa.Super.2010) (viewing a gun allows for probable cause to arrest in Philadelphia), *appeal denied,* 610 Pa. 578, 17 A.3d 1254 (2011). We find that Section 6108 serves a legitimate state interest.

We likewise find that Section 6106 rationally serves a legitimate purpose in regulating the possession of concealed weapons. The licensing process excludes criminals and the mentally ill. Therefore, the statute ensures that those who cannot obtain a license will face additional punishment if they are discovered with firearms concealed on their persons.

Further, we find that the interplay of Sections 6106 and 6108, whereby a person who carries a concealed weapon in Philadelphia will always face enhanced sentencing exposure on a third degree felony, also addresses a legitimate state interest in curbing gun violence in Philadelphia. We find that the Legislature could legitimately amend Section 6106 to include carrying a concealed weapon in a city of the first class as a disqualifier for grading as a first degree misdemeanor. The interplay of Sections 6106 and 6108 simply accomplishes the same.

Appellant characterizes this as "double dipping (use of a particular circumstance to create Section 6108 liability, and use of it again to increase Section 6106 gradation)." (Appellant's brief at 27.) We disagree that the same circumstance is being used to create liability. *Concealment* without a license creates liability under Section 6106, while *possession* in Philadelphia without a license creates liability under Section 6108. Where there is both concealment and possession in Philadelphia without a license, we find that the Legislature can constitutionally impose a harsher penalty because the danger is magnified by the coalescence of two separate circumstances. We find that a legitimate state interest in curbing the culture of gun violence in Philadelphia is thereby served and due process and equal protection are not offended.

Finally, we note other support for the position we adopt today. In *Commonwealth v. Bavusa,* 574 Pa. 620, 832 A.2d 1042 (2003), our supreme court was confronted with a similar argument that employing a contemporaneous Section 6108 offense as the other criminal violation to support a felony grading under Section 6106 offends equal protection and due process principles because it creates a geographical disparity in the treatment of firearms violators within Philadelphia. Although the supreme court declined to review the issue as inadequately briefed and waived, it gave some indication of its opinion on the issue:

> Appellant's equal protection/due process challenge also fails. Again assuming that this argument may be advanced for the first time on appeal if raised under the avoidance canon, appellant has provided insufficient argument to warrant review. *See Purple Orchid, Inc. v. Pennsylvania State Police,* 572 Pa. 171, 813 A.2d 801, 804 (2002) (claims undeveloped in briefs are waived). We note that mere identification of a geographic disparity is insufficient to establish a constitutional violation. *See McGowan v. Maryland,* 366 U.S. 420, 427, 81 S.Ct. 1101, 6 L.Ed.2d

393 (1961) (explaining that equality guarantees relate to "equality between persons as such, rather than between areas, and . . . territorial uniformity is not a constitutional prerequisite"). Thus, such variations may be constitutionally valid, assuming the presence of a sufficient governmental interest (for example, rational basis or compelling interest, depending upon the character of the interest involved). Here, appellant has failed to identify the applicable constitutional standards, much less to develop his constitutional claims on such terms.

*Bavusa*, 574 Pa. at 636–637, 832 A.2d at 1052.

We also note the recent decision of this court in *Commonwealth v. Mendozajr*, 71 A.3d 1023 (Pa.Super.2013). Although no constitutional equal protection argument was raised there, we simply observe that the panel ruled that a contemporaneous Section 6108 violation constitutes another criminal violation within the meaning of Section 6106(a)(2), and operates to disqualify the Section 6106 conviction from misdemeanor grading at sentencing.

In his third issue, appellant maintains that his supplemental statement of errors complained of on appeal should be deemed to have been timely filed. We find this issue to be moot. In the supplemental statement, appellant offered a variation on his suppression argument, contending that there were essentially two frisks of his person. The first frisk consisted of the pat down through the officer's announcement that he felt a hard object, while the second frisk consisted of appellant's admission that he was carrying a gun through the officer recovering the gun. Appellant wants to argue that because the first frisk was without reasonable suspicion, the admission made during the second frisk was a fruit of the poisonous tree and could not justify recovering the gun from his pocket. As our prior analysis of the suppression issue readily indicates, however, we found there was reasonable suspicion to justify what appellant characterizes as the "first frisk." Thus, even if we found the supplemental statement to be timely, the issue raised therein is meritless.

Accordingly, having found no merit to the issues raised on appeal, we will affirm the judgment of sentence.

Judgment of sentence affirmed. Amended Application for Post–Submission Communication accepted in part, and rejected in part.[4]

---

4. On July 24, 2013, the Commonwealth filed an Application for Post–Submission Communication with this court asking us to consider, in resolving the instant appeal, the decision in *Commonwealth v. Hardy*, No. 1653 EDA 2012, filed July 23, 2013. On July 25, 2013, appellant filed an answer objecting to this court considering *Hardy* on the basis that it is a non-binding memorandum decision. On July 25, 2013, the Commonwealth filed the above-referenced amended application asking us to consider both *Hardy* and *Commonwealth v. Mendozajr*, 71 A.3d 1023 (Pa.Super.2013), a published decision also filed July 23, 2013. We will grant the Commonwealth's application as to *Mendozajr*, but will reject it as to *Hardy*, accepting appellant's objection that *Hardy* is non-binding.