J-S44033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DESMOND GREENE | |
| Appellee | No. 207 WDA 2015 |

Appeal from the Order Entered January 7, 2015
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001130-2014

\*\*\*\*\*

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DESMOND GREENE | |
| Appellee | No. 208 WDA 2015 |

Appeal from the Order Entered January 7, 2015
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001299-2014

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 18, 2015**

The Commonwealth appeals from the order entered in the Court of Common Pleas of Mercer County granting Desmond Greene's motion to suppress evidence.  After careful review, we reverse and remand for further proceedings.

The suppression court set forth the facts of this matter as follows:

Officer Adam Zazado of the Sharon Police Department was on patrol on July 18, 2014, in Zone 5 of the City. Zone 5 is a high crime area. At approximately 5:30 p.m., he observed two black males walking south through the alley leading to Morrison Street. One had no shirt and the other was wearing jeans with a long sleeve hoodie with the hood up. The black males glanced in the officer's direction and kept on walking.

It was a sunny day and the temperature was 78 degrees.

Officer Zazado drove around the block to see where the two were headed. The two were still walking down the alley. At that point, the officer decided he wanted to talk to the two black males. He turned his vehicle around and drove up the alley.

When Officer Zazado entered the alley, only one of the black males remained. It was the individual wearing the hoodie. The officer observed that individual fidgeting with his clothing.

The officer identified this black male as [Greene].

As the officer drove toward [Greene], [Greene] began walking east through some yards. The officer drove around the block to get in front of [Greene].[1] He did so on South Oakland.

The officer exited his vehicle and asked [Greene] if he could talk to him. [Greene] agreed.

As the officer was talking to [Greene], he noticed [Greene] was pressing his legs tightly together. When asked why he was doing so, he indicated he had to go to the bathroom. The officer told [Greene] if he had to go to the bathroom, he could have gone in the alley when no one was watching.

[Greene] was fidgety and avoided eye contact. In addition, [Greene] continued to put his hands in his pants pockets even though instructed not to do so by the officer.

_____

[1] Officer Zazado actually testified that he parked his cruiser behind, not in front of, Greene, who was continuing to walk. *See* N.T. Suppression Hearing, 1/7/15, at 16.

As a result of all the above factors, the officer felt he needed to pat-down [Greene] to determine if he was armed. He instructed [Greene] to walk over to the officer's cruiser so he could be patted down. As [Greene] walked over, Office[r] Zazado saw a large bulge in the thigh area of [Greene's] left leg. [Greene] was ordered to stop. A second officer, Officer Zych, who had just arrived on the scene, articulated [Greene's] left leg and found a hand gun.

Trial Court Opinion, 2/24/15, at 2-3.

Greene was subsequently charged with one count each of carrying a firearm without a license,[2] possession of a firearm prohibited,[3] and receiving stolen property[4] after a records search of the firearm's serial number showed it to be stolen.

On December 1, 2014, Greene filed an omnibus pre-trial motion and on January 7, 2015, the suppression court held that there was no basis to believe that criminal activity was afoot, and therefore the pat down and discovery of Greene's firearm was unlawful. The Commonwealth filed a timely notice of appeal asserting that the grant of Greene's suppression motion would substantially handicap the prosecution, *see* Pa.R.A.P. 311(d), as well as a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, the Commonwealth raises the following claim:

_____

[2] 18 Pa.C.S. § 6106.

[3] 18 Pa.C.S. § 6105.

[4] 18 Pa.C.S. § 3925.

Whether [Officer Zazado] lacked reasonable suspicion that criminal activity may have been afoot or that [Greene] may have been armed and dangerous to police based upon the totality of the circumstances that included, but were not limited to, [Greene's] failure to remove his hands from his pockets in a high crime area after being told to do so?

Brief of Appellant, at 4.

Our standard of review when evaluating a suppression order is well settled:

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the [appellee] prevailed in the suppression court, we may consider only the evidence of the [appellee] and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012) (citations omitted).

The Commonwealth argues that Officer Zazado possessed reasonable suspicion that criminal activity was afoot and that Greene was armed and dangerous. The Commonwealth claims that there is no dispute that Officer Zazado's initial contact with Greene was lawful as a mere encounter, and the suppression court agreed. However, the Commonwealth asserts that "Greene's failure to keep his hands out of his pockets . . . has been held

- 4 -

sufficient cause to conduct a pat down" and, even if that factor alone did not establish reasonable suspicion, the totality of the circumstances did. We agree.

> There are three categories of interactions between citizens and police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 (Pa. 1998) (citations omitted).

In order to determine whether an investigative detention has occurred, circumstances to be examined include any which may "evidence a show of authority or exercise of force including such subtle factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Commonwealth v. Jones*, 378 A.2d 835, 839-40 (Pa. 1977). After examining the circumstances, the standard to be used is whether "a reasonable man, innocent of any crime, would have thought [he was being restrained] had he been in the defendant's shoes." *Id.* at 840.

To establish reasonable suspicion, an officer must "articulate specific observations which, in conjunction with reasonable inferences derived from

those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." ***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa. Super. 2009), quoting ***Commonwealth v. Reppert***, 814 A.2d 1196, 1203 (Pa. Super. 2002). In such an inquiry, the totality of the circumstances must be considered. ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). "[T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, 'even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.'" ***Commonwealth v. Rogers***, 849 A.2d 1185, 1189 (Pa. 2004), quoting ***Commonwealth v. Cook***, 735 A.2d 673, 676 (Pa. 1999). We must give "due weight . . . to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." ***Commonwealth v. Cook***, 735 A.2d 673, 676 (Pa. 1999), quoting ***Terry v. Ohio***, 392 U.S. 1, 27 (1968).

Here, we agree with the Commonwealth and the suppression court that Officer Zazado's initial interaction with Greene was a mere encounter. Officer Zazado, suspicious that Greene was wearing a hoodie on a sunny, 78-degree day, decided to investigate further. Officer Zazado took his cruiser to the alley where Greene was walking and, as Officer Zazado began following him (without lights or sirens), Greene began cutting through yards of residences in the other direction. Ultimately, Officer Zazado stopped his vehicle behind Greene as Greene continued to walk on. Officer Zazado

asked Greene if he could speak with him and Greene agreed. At this point, Officer Zazado had made no show of authority or exercise of force such as would cause a reasonable person to believe he was being restrained. *See id.* Greene could have simply continued to walk on, unimpeded by Officer Zazado or his vehicle, without responding to the officer's request to speak with him. Greene, however, agreed to speak with Officer Zazado.

As Greene's interaction with Officer Zazado progressed, Greene began exhibiting signs of nervousness, fidgeting with his shoes, avoiding eye contact and awkwardly standing with his knees pressed tightly together. Most notably, during his encounter with Officer Zazado, Greene "repeatedly put his hands into his [pants] pockets approximately three times," despite Officer Zazado's instruction to remove them. N.T. Suppression Hearing, 1/7/15, at 9.

Based on the foregoing behavior exhibited by Greene – particularly his refusal to remove his hands from his pockets – and the fact that the encounter was occurring in a high-crime neighborhood, Officer Zazado testified that he became fearful for his own safety. As a result, Officer Zazado advised Greene that he wished to pat him down. After Officer Zazado directed Greene to walk over to his cruiser for a pat-down, Greene unlocked his legs and began to walk, at which point Officer Zazado "saw a large bulge in [Greene's] left leg towards his thigh area like something fall [sic]." *Id.* at 12.

The pertinent facts in **Commonwealth v. Hall**, 713 A.2d 650 (Pa. Super. 1998), *rev'd on other grounds*, 771 A.2d 1232 (Pa. 2001), are analogous to the matter before the Court. In that case,

> [t]wo Reading police officers, patrolling in their cruiser, saw defendant and a companion conversing in an alley near a café. The police parked their vehicle, the conversants [sic] broke up, and appellant approached the police car while getting his I.D. out of his wallet and asked "Is everything all right, officer?" After a brief exchange, the officer removed from his vehicle and noticed Hall had his hands in his pocket. He asked if he was armed and Hall said he was not. Hall was asked to take his hands out of his pocket, but only removed his left hand. As the officer came to him, Hall pivoted with his hand in his pocket. After being asked again to remove his hand, he did, but became confrontational and stated that he would not be searched. The officer replied that he would not search him, but only pat him down for weapons.

**Id.** at 652-53. The Court concluded that "when Hall approached with his hand thrust in his pocket and refused to remove it, the encounter escalated into a situation where the totality of circumstances involved a reasonable suspicion and justified a detention to stop and frisk." **Id.** at 653. Thus, "the single factor of the defendant keeping his hand in his pocket after being asked to remove it escalated the encounter into one of reasonable suspicion." **Commonwealth v. Scarborough**, 89 A.3d 679, 684 (Pa. Super. 2014), citing **Hall**, **supra**.

The result in **Scarborough**, **supra**, similarly militates in favor of a finding that Officer Zazado possessed reasonable suspicion to perform a weapons pat-down. In **Scarborough**, two officers were on bicycle patrol in a high-crime area of Philadelphia when the following transpired:

> The officers observed the defendant heading southbound, toward them, . . . riding a bicycle and talking on a cellular phone. The officers stopped the defendant in order to issue him a citation for using the phone while operating a vehicle, in violation of a City of [a] Philadelphia ordinance[.]
>
> When asked, the defendant hung up his phone and placed it in his left jacket pocket. The officers also asked for his identification. The defendant began to behave nervously, and put his hand in his right jacket pocket but did not withdraw it. The officers reiterated their request for identification, and asked the defendant to remove his hand from his right pocket. The defendant looked around and appeared extremely nervous. Upon being asked a second time, he removed his hand from his right pocket.

*Id.* at 682. The officers proceeded to conduct a pat-down for their safety and discovered a firearm. On appeal of the suppression court's refusal to exclude the firearm discovered during the pat-down, this Court emphasized the significance of the defendant's refusal to remove his hand from his pocket and concluded that the police had the right to perform a weapons frisk.

Here, as in **Hall** and **Scarborough**, we conclude that, based on the totality of the circumstances present at the time of the interaction, when Greene repeatedly placed his hands in his pockets despite Officer Zazado's instructions to remove them, Officer Zazado possessed reasonable suspicion that Greene might be armed and dangerous. Accordingly, Officer Zazado was justified in requesting that Greene submit to a weapons pat-down. Thus, the suppression court erred by concluding that Officer Zazado lacked reasonable suspicion and suppressing the evidence obtained as a result of the pat-down.

Order reversed; case remanded for proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2015