J-S57008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN LOWE | |
| Appellant | No. 1470 EDA 2014 |

Appeal from the Order April 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0017506-2013

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                **FILED JANUARY 12, 2016**

Appellant, Kevin Lowe, appeals from the April 23, 2014 order denying his writ of *certiorari* to the Court of Common Pleas from the order entered in municipal court denying his motion to suppress.  After careful review, we reverse and order Appellant discharged.

The trial court set forth the relevant facts as follows.

> At the suppression hearing, on December 4, 2013, Philadelphia Police Officer Washington testified that he was on duty on May 5, 2013 at approximately 3:00 AM, when he encountered [] [A]ppellant at or near the 2100 block of Cambria Street in Philadelphia.  [Officer Washington stated this block was the location of occasional robberies and that he knew it for narcotics.]
>
> At that time and place, the officer indicated that he received a radio call for a person with a gun in that vicinity.  The flash information pointed to a male wearing red possessing the gun.  As the police approached the area, they noticed [Appellant] fitting

the flash information and as Officer Washington trie[d] to make contact with him, he fled eastbound on the 200[0] block of Cambria Street and holding the right side of his hoody pocket. Once apprehended, [] [A]ppellant was handcuffed and patted down. During that process [O]fficer Washington felt a small box consistent with narcotics packaging [in the right side of Appellant's hoody pocket]. In fact as he withdrew the package from [] [A]ppellant, he discovered five [] small zip-lock baggies, containing an off-white substance believed to be [crack] cocaine. [Police did not recover a firearm.] …

There was no one else on the street present at the time of the approach of [Appellant] and no one else fitting the description from the flash information.

Trial Court Opinion, 1/22/15, at 1-2 (citations omitted).

Based on the foregoing, the Commonwealth charged Appellant with one count of knowingly or intentionally possessing a controlled substance.[1] On December 4, 2013, Appellant litigated, in the Philadelphia Municipal Court, a motion to suppress the five baggies of narcotics. Following an evidentiary hearing, the suppression court denied Appellant's motion to suppress. The case proceeded to a trial, and the trial court found Appellant guilty of the aforementioned charge. Immediately thereafter, the trial court sentenced Appellant to 15 months' probation. Appellant subsequently filed a petition for a writ of *certiorari* to the Court of Common Pleas, challenging the denial of his motion to suppress. On April 23, 2014, the Court of Common

_____

[1] 35 P.S. § 780-113(a)(16).

Pleas denied Appellant's petition. Thereafter, on May 13, 2014, Appellant timely filed a notice of appeal.[2]

On appeal, Appellant raises the following issue for our review.

> Where the officer who originally stopped and frisked [A]ppellant had neither reasonable suspicion to stop and frisk nor probable cause to arrest and search him on the basis of an anonymous radio call[,] was not the search and seizure a violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution and further did not the officer then exceed the permitted scope of a frisk, violating the "plain-feel" doctrine, by subjecting [A]ppellant to a search of his person after feeling items that were not immediately apparent as contraband?

Appellant's Brief at 3.

Appellant challenges the denial of his motion to suppress. Our standard of review is as follows.

> In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as it remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by

---

[2] Appellant and the Court of Common Pleas have complied with Pennsylvania Rule of Appellate Procedure 1925.

those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Scarborough***, 89 A.3d 679, 683 (Pa. Super. 2014) (citation omitted), *appeal denied*, 102 A.3d 985 (Pa. 2014).

Moreover, Pennsylvania Rule of Criminal Procedure 581(H) provides that in a suppression hearing, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). The standard of proof is a preponderance of the evidence. ***Id.*** at cmt., *citing* ***Commonwealth ex rel. Butler v. Rundle***, 239 A.2d 426 (Pa. 1968).

First, Appellant challenges the legality of his stop by Officer Washington. Resolution of this issue is dependent upon the nature of the interaction between Appellant and the police.

> The Fourth Amendment of the U.S. Constitution and Article I, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. To safeguard this right, courts require police to articulate the basis for their interaction with citizens in increasingly intrusive situations:
>
> > The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional

> equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.
>
> ***Commonwealth v. Downey****,* 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted)[, *appeal denied*, 50 A.3d 124 (Pa. 2012)].

***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).

The parties and the Court of Common Pleas agree that Officer Washington effected an investigative detention, but disagree as to when the stop occurred. Appellant contends that he was detained when Officer Washington initially approached him and verbally attempted to stop him. Appellant's Brief at 8-9. The Commonwealth asserts that Appellant was not subjected to an investigative detention until after he fled and Officer Washington caught him. Commonwealth's Brief at 7. The trial court agreed with the Commonwealth's position. Trial Court Opinion, 1/22/15, at 5-6.

We conclude that Appellant was stopped when Officer Washington verbally indicated that Appellant was not free to leave. As noted above, it is the Commonwealth's burden to show that Appellant's rights were not violated. Pa.R.Crim.P. 581(H). As a result, once Appellant alleged that he was seized when Officer Washington verbally called out to him, the Commonwealth must demonstrate that he was not seized. ***See id.*** Our review of the record of the suppression hearing reveals that the Commonwealth did not meet its burden.

Officer Washington testified that when he saw Appellant matched the radio description of "a male that was wearing red," he pulled his marked police vehicle over, exited the car, and "attempted to stop [Appellant]" by issuing a verbal command. N.T., 12/4/13, at 7, 10. Officer Washington further testified that he did not recall "verbatim what may have come out of [his] mouth," and that he may have said "[l]et me see your hands," "hey, you," or "stop" in the attempt to stop Appellant. *Id.* at 11. This evidence, that Officer Washington exited his vehicle and immediately issued a verbal command to Appellant to attempt to stop him, leads us to conclude that the Commonwealth did not prove that it was more likely than not that Appellant was under no official compulsion to stop. *See Commonwealth v. Ranson*, 103 A.3d 73, 77 (Pa. Super. 2014) (concluding that an investigative detention occurs when police orally order a citizen to stop), *appeal denied*, 117 A.3d 296 (Pa. 2015); Pa.R.Crim.P. 581(H); *McAdoo*, *supra*. Accordingly, the record does not support the trial court's finding that "[t]he officer cannot recall what he said at the time of the encounter but it appears that it was not an authoritative shout or gesture." Trial Court Opinion, 1/22/15, at 5-6. The Commonwealth did not prove by a preponderance of the evidence that Officer Washington's statement, which Officer Washington acknowledged he made in an attempt to stop Appellant, was not a

compulsion to stop.[3]  Therefore, under the circumstances of this case, we conclude that Appellant was subjected to an investigative detention at this point.  **See** Pa.R.Crim.P. 581(H); **McAdoo**, **supra**.

Because Appellant was subjected to an investigative detention when Officer Washington verbally called out to him, that stop must have been supported by reasonable suspicion.  **See McAdoo**, **supra**.  Our Supreme Court has defined reasonable suspicion as follows.

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot.  In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

_____

[3] We are cognizant that "the police officer's subjective intent does not govern the [custody] determination," but we must ascertain "the reasonable belief of the individual being interrogated." **Commonwealth v. Zogby**, 689 A.2d 280, 282 (Pa. Super. 1997), *appeal denied*, 698 A.2d 67 (Pa. 1997). We do not conclude that Appellant was subject to an investigative detention based on Officer Washington's subjective belief.  Instead, we conclude that the Commonwealth could not meet its burden to show that Appellant was not subjected to an investigative detention when the only evidence it presented was Officer Washington's testimony that he did not remember the exact phrase he employed, but expressed his intent in initiating the encounter and making the statement was to stop Appellant.  Based on these circumstances, we conclude that the command to Appellant likely made Appellant believe that he was not free to leave.

…

> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

**Commonwealth v. Holmes**, 14 A.3d 89, 95-96 (Pa. 2011) (internal citations, quotation marks, and emphasis omitted).

Appellant argues that the anonymous radio call for a man wearing red with a gun cannot be the sole basis for reasonable suspicion. Appellant's Brief at 7.[4] Our Supreme Court has explained that an anonymous tip alone cannot supply reasonable suspicion to stop and frisk a citizen because an anonymous tip is unreliable. **Commonwealth v. Jackson**, 698 A.2d 571, 576 (Pa. 1997). Further, merely viewing a person who matches the description of the anonymous tip does not corroborate the tip's allegations of criminal conduct. **Id.** at 574-575 (citation omitted). Instead, when investigating an anonymous tip, the police need an independent basis to

---

[4] The Commonwealth and the trial court did not address whether there was reasonable suspicion to seize Appellant when Officer Washington commanded Appellant to stop. Instead, they determined that Appellant was not stopped until he was seized after he fled. Commonwealth's Brief at 6; Trial Court Opinion, 1/22/15, at 6.

corroborate the tip's allegations of criminal activity before a seizure is effectuated. **Id.** at 574; **see also Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*) ("if the person described by the [anonymous] tipster engages in other suspicious behavior … reasonable suspicion justifying an investigatory detention is present[]"), *appeal denied*, 990 A.2d 727 (Pa. 2010).

Here, the anonymous tip that a male wearing red had a gun did not give Officer Washington reasonable suspicion to stop Appellant for suspected possession of a firearm. **See Jackson**, **supra** at 576. The anonymous tip was vague and particularly unreliable. The entirety of the tip was that a "male wearing red" had a gun. It did not contain any other distinguishing personal information, such as height, weight, race, or unique features. It did not identify which article(s) of clothing were red, and it did not describe any distinctive characteristics of the clothing, such as a pattern or a logo (or the absence thereof). Further, it did not relate any other clothing that the person was wearing. Moreover, the tip did not identify a specific street or intersection where the "male wearing red" was located. Additionally, the anonymous tip was not predictive of Appellant's future behavior. Therefore, this anonymous tip did not provide reasonable suspicion to conduct an investigative detention of Appellant. **See id.**

Even though the anonymous tip itself was not reliable, we proceed to examine whether the circumstances revealed additional information that

could corroborate the anonymous tip and give rise to reasonable suspicion to support the investigative detention. *See Foglia*, *supra*. Specifically, shortly after receiving the flash bulletin, the police investigated the report and observed Appellant sitting on the street, alone, in a high crime area at 3:00 a.m.[5] N.T., 12/4/13, at 7. When they saw Appellant, the police did not observe Appellant in possession of a firearm. *Id.* Appellant's mere presence in a high-crime area, without more, was not sufficient to corroborate the allegation of the anonymous tip that Appellant had a gun. *See Commonwealth v. Ayala*, 791 A.2d 1202, (Pa. Super. 2002) (concluding that reasonable suspicion did not exist where the suspect, who matched the description contained in an anonymous tip, was in the passenger's seat of a parked car in a high crime area because the suspect did not engage in any suspicious conduct); *see also In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) (noting "[t]he [United States Supreme] Court[, in *Illinois v. Wardlow*, 528 U.S. 119 (2000),] acknowledged that mere presence in a high crime area was insufficient to support a finding of reasonable suspicion[]"). Further, the police responding to the anonymous tip did not observe Appellant engage in any independent conduct that would give rise to reasonable suspicion of any other criminal activity, nor did they

_____

[5] Because we have concluded that Officer Washington effected the investigative detention before Appellant fled, we do not consider the flight or what occurred thereafter in our reasonable suspicion analysis.

see Appellant in possession of a gun. **See Foglia**, **supra**; **compare Commonwealth v. Zhahir**, 751 A.2d 1153, 1157 (Pa. 2000) (explaining that an officer's observation of suspect's suspicious and furtive movements, consistent with narcotics trafficking, in an area associated with criminal activity, corroborated an anonymous tip). Instead, police saw Appellant sitting on the street, decided he matched the anonymous tip of a "male wearing red," and immediately seized him for an investigative detention. In these circumstances, the investigative detention was not supported by reasonable suspicion. As such, the stop was unlawful and the evidence seized as a result thereof must be suppressed.[6] **See Scarborough**, **supra**.

For the foregoing reasons, we conclude that the Court of Common Pleas erred in denying Appellant's petition for writ of *certiorari* and that the suppression court erred in denying Appellant's motion to suppress. Therefore, the Court of Common Pleas' April 23, 2014 order is reversed. Further, in the absence of the five baggies of narcotics, there is no other evidence that Appellant engaged in any unlawful act. Consequently, he is entitled to a discharge. **See Commonwealth v. Berkheimer**, 57 A.3d 171, 190 (Pa. Super. 2012) (*en banc*) (issuing a discharge after reversing a

_____

[6] Because we have reversed the trial court's order on this basis, we need not discuss the issue of whether the officer exceeded the scope of the plain feel doctrine by seizing the five baggies following a pat down.

suppression order because there was no other evidence against the defendant).

Order reversed. Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2016