J-S71012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUADIR POWELL | : | |
| | : | |
| Appellant | : | No. 1031 EDA 2017 |

Appeal from the Judgment of Sentence January 23, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002889-2016

BEFORE:  PANELLA, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, J.:                **FILED OCTOBER 08, 2019**

Appellant, Quadir Powell, appeals from the judgment of sentence imposed following his guilty plea to violations of the Uniform Firearms Act ("VUFA").  Specifically, Appellant challenges the denial of his motion to suppress the discovery of a firearm.  The suppression court properly found that the arresting police officer had reasonable suspicion for a traffic stop and to perform pat-down searches on Appellant, which ultimately revealed a loaded .22 caliber revolver.  Accordingly, we affirm.

The trial court summarized the evidence presented at the suppression hearing:

> [On March 2, 2016,] Philadelphia Police Officer [Jeffrey] Donahue was working with his partner Police Officer Gerard in a marked patrol vehicle, in the vicinity of the 6500 block [of Paschall Avenue] in the City and County of Philadelphia. (N.T. [Suppression Hearing, 8/18/16] at 5 and 6)[.] He described it as "a high crime area a high-drug, high-crime, high-shooting area. At the time I

was in our tactical squad, I had several officers make gun arrests in that exact location." (N.T. at 13)[.]

At approximately 7:44 p.m., they noticed a dark Dodge Charger, with three occupants, traveling westbound on Paschall Avenue. The car had no license plate, only a temporary sticker, with no readily visible identifying numbers or letters, in the rear window. (NT. at 5-7)[.] The police issued no ticket for this violation. (N.T. at 16)[.] The police pulled over the Charger, using lights and sirens. The car stopped in the running lane and all the occupants turned and looked in the direction of the police. (N.T. at 7)[.] Officer Gerard then signaled for the driver to pull over to the side of the road, which he did. Again, all occupants turned and looked at the police. [Appellant] was the front passenger. (N.T. at 8)[.]

As Officer Donahue approached the passenger side he saw [Appellant], "reach up with his left hand several times and touch his left front pocket of his jacket. The kind of thing people do when they're checking on their gun." He described the coat as a "puffy" winter coat. (N.T. at 9).

The key testimony regarding removing [Appellant] from the car and frisking him was:

BY MS. BIRCH (Prosecutor):

Q. Based on your observation what, if anything, did you do?

A. At that point, I knocked on the window to indicate for him to roll it down. He turns and asks, What? I ask him to roll down the window. He does.

I began asking him a few questions of where he lives and where they were going that evening. He was being very vague. Like when I asked him where he was living, he would just give an area where he lives, like, Buist Ave. And he was not being direct.

While I'm asking him questions, he touches his pocket again. At that point in time, I feel that he had something on him that could either endanger myself or my partner and I ask him to step out of the vehicle. As he steps out, I do a

frisk of the outer garments of him and I don't feel anything at this point in time. I pass him back to the vehicle where there was back up officers standing there with the other occupants. Then I was about to begin a search of the immediate area where he was sitting.

Q. Where is the [Appellant] when you are about to start the frisk of where he's sitting?

A. He's on the back of the trunk area with his hands on the trunk.

Q. And do you have the opportunity to look back at him?

A. That's correct. As I'm getting ready to do the frisk search of the car, I make a quick glance back to make sure the other officers were safe. Again, I see him take his hands off and touch the pocket.

Q. Same motion as before?

A. That's correct.

Q. After you observe him what, if anything, did you do?

A. I go back to the vehicle and I do another frisk at which point I feel in the left front pocket, a small firearm. (NT. at 9, 10 and 11)[.]

In addition, the police did a check through NCIC, PCIC and found that Defendant had an outstanding warrant for a probation violation. (NT. at 12)[.]

Suppression Court Opinion, 11/20/17, at 3-4. The suppression court denied the motion.

On November 14, 2016, Appellant entered an open guilty plea to illegally possessing a firearm (due to his prior conviction of possession with intent to deliver), 18 Pa.C.S.A. § 6105; carrying a firearm without a license, 18

Pa.C.S.A. § 6106; and carrying a firearm on public streets or public property in Philadelphia, 18 Pa.C.S.A. § 6108. *See* N.T. Guilty Plea, 11/14/16, 8-9. The trial court accepted the plea. Without objection from the Commonwealth, the trial court also granted Appellant's request to reserve the right to appeal the denial of his motion for suppression.

On January 23, 2017, the court sentenced him to three concurrent sentences for an aggregate county sentence of not less than eleven-and-one-half nor more than twenty-three months of confinement, to be followed by five years of reporting probation. This timely appeal followed. Both Appellant and the suppression court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents one over-arching general question and four subsidiary questions for our review:

> Did the [trial] court violate the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution in denying Appellant's motion to suppress because:
>
> A. The police lacked reasonable suspicion or probable cause to conduct a traffic stop where the officer's belief that the law requires a metal plate in addition to a valid temporary registration plate is not objectively reasonable, such that the recovery of the firearm was fruit of the unlawful seizure?;
>
> B. The police lacked reasonable suspicion that Appellant's act of touching his pocket several times established that Appellant was armed and dangerous sufficient to conduct a *Terry* frisk, such that the second frisk and recovery of the firearm were fruit of the initial unlawful frisk?;

C. The police lacked reasonable suspicion to conduct a second *Terry* frisk of Appellant because the first frisk dispelled any suspicion that Appellant was armed and dangerous, and Appellant engaged in no new conduct which would provide reasonable articulable facts that Appellant remained armed and dangerous?; and

D. The officer exceeded the permissible scope in conducting the second *Terry* frisk because the officer manipulated the item inside Appellant's pocket without the requisite probable cause?

Appellant's Brief, at 3.

Our standard of review for a challenge to the denial of a motion to suppress evidence is well-settled:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). For our review, we examine the totality of the circumstances. *See Commonwealth v. Smith*, 77 A.3d 562, 572 (Pa. 2013).

- 5 -

In his first issue, Appellant claims, in effect, that because Officer Donahue misconstrued the statutory requirements for display of a temporary license plate, his stop of the vehicle in which Appellant was a passenger was in error and violated the state and federal constitutions. (**See** Appellant's Brief, at 11-15). We disagree.

"The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." **Commonwealth v. Holmes**, 14 A.3d 89, 94 (Pa. 2011) (citation omitted). Where it is not necessary to stop a vehicle to determine that a vehicle code violation has occurred, an officer must possess probable cause of the violation to stop the vehicle. **See Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa. Super. 2015).

The United States Supreme Court has held that a police officer's reasonable mistake of law can give rise to reasonable suspicion sufficient to justify a vehicle stop under the Fourth Amendment. **See Heien v. North Carolina**, 135 S. Ct. 530, 536 (2014): "[W]e have repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness. To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." (citations and internal quotation marks omitted).

Here, as in **_Heien_**, we have no difficulty concluding that Officer Donahue's interpretation of the requirements for display of a license plate, even if the officer's conclusion may have amounted to a technical error of law, was objectively reasonable. **_See_** 75 Pa.C.S.A. § 1331 (requiring display of necessary identifying numbers and letters on a license plate, and requiring PennDOT to provide temporary plates); **_see also_** 75 Pa.C.S.A. § 1332(b)(3) (prohibiting display of registration plate which, for any reason, is illegible at a reasonable distance or is obscured in any manner).

In this case, Officer Donahue observed that the vehicle in which Appellant was a passenger had no outside license plate. It only had a temporary sticker in the rear window. From the officer's vantage point in the patrol car, the sticker in the rear window did not display any identifying numbers or letters visible from a reasonable distance. **_See_**, N.T., Suppression Hearing, 8/18/16, at 7. He decided that the sticker did not comply with the statutory requirement to display visible letters and numbers. **_See id_**.

Under **_Heien_**, Officer Donahue's observations were sufficient to support a finding of probable cause of a vehicle code violation. **_See Commonwealth v. Wilbert_**, 858 A.2d 1247, 1250 (Pa. Super. 2004) (concluding that officer's inability to discern information on license plate until she inspected the plate closely supported a finding of probable cause of a violation of 75 Pa.C.S.A. § 1332). Therefore, even if we assume Appellant is correct in his assertion that

Officer Donahue was mistaken about the technical requirements for a temporary plate, Appellant is due no relief.

Appellant's remaining three questions all challenge the legality of the frisks, especially the second frisk, which uncovered the loaded weapon. *See* Appellant's Brief, at 3. Chiefly, Appellant challenges whether Officer Donahue possessed reasonable suspicion to perform two pat-downs for weapons. We address Appellant's reasonable suspicion arguments together.

Appellant argues that Officer Donahue lacked reasonable suspicion to frisk him either the first or the second time. He maintains that touching his jacket pocket multiple times was the "primary reason" he was frisked. Appellant's Brief, at 15. He contends this repeated gesture was insufficient to justify a frisk. *See id.* He concludes that his sentence must be vacated, and the matter remanded for a new trial. We disagree.

> There must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio*, 392 U.S. 1, 27 (1968) (citations omitted).

> A police officer may conduct a quick frisk for weapons if he or she reasonably fears that the person with whom he or she is dealing may be armed and dangerous. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger.

The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer.

***Commonwealth v. Cooper***, 994 A.2d 589, 592–93 (Pa. Super. 2010)

(citation omitted).

[I]f the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a ***Terry*** search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

***Commonwealth v. Scarborough***, 89 A.3d 679, 683 (Pa. Super. 2014)

(citations omitted).

Here, Appellant asserts that he was compliant with Officer Donahue. Nevertheless, he concedes "[h]e might not have been as forthcoming as the officer would have liked, but that should be irrelevant." Appellant's Brief, at 19. He posits that "a lack of full cooperation" should not be treated as suspicious conduct. ***Id.*** To do so, he insists, "would allow police to use the assertions of constitutional rights as evidence of a crime." ***Id.***

Appellant's argument is misconceived and mistaken. His bald, unsupported generalization overlooks, or chooses to ignore, decades of well-settled jurisprudence beginning with ***Terry*** itself:

Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman

and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. **Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.**

*Terry*, 392 U.S. at 30–31 (emphasis added).

Furthermore, Appellant posits, but fails to support by reference to pertinent authority, a *de facto* rule imposing unspecified conditions under which a second frisk is prohibited. Instead, Appellant employs the simple but unsupported expedient of citing numerous cases which **permitted** a second frisk, and concluding that none of the cases cited fit the situation here. *See* Appellant's Brief, at 21. Appellant's reliance is misplaced. His argument lacks merit.

On independent review of the totality of circumstances, we conclude that the suppression court properly determined that Appellant's motion did not merit relief. The police made a lawful traffic stop at night in "a high-crime, high-shooting area." N.T., Suppression Hearing, 8/18/16, at 13. Appellant gave Officer Donahue hesitant and vague answers to simple questions, such as where he was from. *See id*., at 10. Appellant's unresponsive answers failed to give Officer Donahue the assurance that everything was in order. *See id*.

Officer Donahue also noticed that Appellant repeatedly patted the upper left pocket of his puffy winter coat. *See id*. He patted Appellant down for weapons but found none. *See id*.

However, when he observed Appellant continuing to pat the upper left pocket of his coat, the officer checked again. *See id*., at 11. This time he found the loaded revolver. *See id*.

> **In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.** When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Commonwealth v. Stevenson*, 894 A.2d 759, 771–72 (Pa. Super. 2006) (quoting *Terry*, 392 U.S. at 23-24) (emphasis in original).

Finally, Appellant argues that the second frisk was unlawful under the plain feel doctrine, citing cases in which a weapons search uncovered other contraband. Appellant's argument misconstrues the relevance of some of his authority. *See* Appellant's Brief, at 22, citing, *inter alia, Adams v. Williams,* 407 U.S. 143, 149 (1972) (concluding that heroin was properly admitted at trial, where arrest on weapons charge supported by probable cause, and search of defendant and vehicle incident to arrest was lawful). In any event, Appellant's argument is essentially irrelevant to the issues on this appeal. No non-weapon contraband was discovered here. There is, therefore, no issue of

using a weapons search as a justification for the warrantless search for non-weapons contraband evidence.  Appellant's argument does not merit relief.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/19