J-S90010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| QUONZELL LEE | : | |
| | : | |
| Appellant | : | No. 658 EDA 2016 |

Appeal from the Judgment of Sentence February 19, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007635-2015

BEFORE:  OTT, SOLANO, and JENKINS, JJ.

MEMORANDUM BY OTT, J.:                              **FILED MAY 19, 2017**

Quonzell Lee appeals from the judgment of sentence entered on February 19, 2016, in the Philadelphia County Court of Common Pleas.  On December 16, 2015, the trial court, sitting without a jury, found Lee guilty of possession with intent to deliver ("PWID") and possession of a controlled substance.[1]  The court sentenced Lee to a term of two to four years' incarceration, followed by a term of four years' probation.  The sole issue on appeal is Lee's contention that the trial court erred in denying his suppression motion.  After a thorough review of the submissions by the

_____

[1]  35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.

parties, the certified record, and relevant law, we affirm the judgment of sentence.

The trial court set forth the factual history as follow:

On the evening of July 11, 2015, at approximately 7:50 p.m., Police Officer Jeffrey Opalski #7122 was on duty in the area of North 77th Street and Overbrook Avenue along with his partner, Officer D'Alesio #1521. While driving in their marked patrol vehicle, the two uniformed officers observed [Lee], who was the sole occupant and operator of a red Ford Taurus, disregard a stop sign. The officers pulled behind [Lee]'s vehicle and, prior to the officer's activating their overhead lights, observed [Lee] proceed northbound on 77th Street at a high rate of speed. [Lee] cut through a parking lot and exited at 7700 City Avenue. The officers activated their overhead lights and attempted to catch up with [Lee]'s vehicle. [Lee] pulled over in a bank parking lot at 77th and Overbrook.

Officer Opalski approached [Lee]'s vehicle on the passenger's side and observed that [Lee] had small black rubber bands on his right ha[n]d and a wad of cash in his right shorts pocket. Upon requesting [Lee]'s paperwork, Office[r] Opalski observed [Lee] trembling, breathing heavily, and visibly shaking. Officer Opalski testified that he recognized the rubber bands as comparable to those used to bundle heroin. After reviewing the paperwork, the officers learned that the car was a rental. The officers asked [Lee] to step out of the car and Officer Opalski performed a frisk for safety. [Officer] Opalski testified that, based on [Lee]'s nervousness, the rubber bands, and money, there was a "possibility of a weapon in the vehicle."

Upon frisking [Lee]'s left short pocket, Officer Opalski immediately recognized the item contained within as a bundle of heroin. At that point, [Lee] admits that he has a small amount of drugs on him. The Officer recovered a bundle of heroin and placed [Lee] in custody.

Officer Opalski testified that the area where he initially observed [Lee] is a "high narcotics area, specifically heroin." He further noted, that, as a result of the high drug volume, there are nearby "shootings all the time, robberies, stuff involving guns."

- 2 -

Trial Court Opinion, 5/13/2016, at unnumbered 1-2 (record citations omitted).

Lee was arrested and charged with numerous offenses related to the incident. On September 9, 2015, he filed a pre-trial motion to suppress physical evidence as well as his statements to police. The trial court held a hearing and denied the motion on October 22, 2015. The matter proceeded to a one-day bench trial on February 16, 2016, at which time the court convicted Lee of the above-stated crimes. On February 19, 2016, the court sentenced Lee to a term of two to four years' incarceration, followed by four years' of probation for the PWID conviction. The court did not impose a further penalty with regard to the possession offense. Lee did not file post-sentence motions but did file a timely notice of appeal.[2]

In his sole issue on appeal, Lee asserts the trial court erred in denying his motion to suppress. **See** Lee's Brief at 9. Specifically, he states:

> Legally, the facts support neither the officer's frisk of Mr. Lee for weapons because the officer's belief that Mr. Lee was armed and dangerous was not reasonable, nor the search of the left pocket of Mr. Lee's shorts under the plain feel doctrine. Given the officer's illegal actions, the subsequent search of the car Mr. Lee was driving, which resulted in the discovery of additional drugs, was likewise unconstitutional.

_____

[2] On February 29, 2016, the trial court ordered Lee to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Lee filed a concise statement and supplemental concise statement on March 21, 2016, and April 15, 2016, respectively. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 13, 2016.

*Id.* at 10. In support of his contention that the facts do not support an inference of reasonable suspicion, Lee points to the following:

> In this case, police stopped Mr. Lee for traffic violations on a summer evening. Two officers approached Mr. Lee, who was the sole occupant in the car. Mr. Lee provided identification to police. He visibly had money in the right pocket of his shorts and he had rubber bands around his fingers. The officer testified that he frisked Mr. Lee because of the rubber bands (which the officer testified were used to package drugs), the money, Mr. Lee appeared nervous, and the stop occurred in a high drug area.
>
> …
>
> The [trial] court heard no testimony about the officer's experience, other than the officer's reference that the rubber bands he saw around Mr. Lee's fingers were used to bundle drugs. Rubber bands have legal uses, as does money. There was only a reference by the officer that the area where Mr. Lee was stopped was a high drug area. Yet, there was no specificity about the area. There was no testimony how the officer knew the area was a high drug area. No information came forth about drug arrests in the area, or any drug surveillance that the testifying officer observed, or any arrests that he made. Lastly, Mr. Lee's nervousness could be attributed to being pulled over by police in an area known for drugs. The mere presence of police in an area known for drugs can create the type of behavior regarded as suspicious here. No fact in the record individually or under the totality of the circumstances gave the officer reasonable suspicion to frisk Mr. Lee. The frisk was improper.

*Id.* at 11-12 (footnote omitted). Furthermore, Lee argues that even if the frisk was proper, it exceeded the lawful scope of *Terry v. Ohio*, 392 U.S. 1 (1968), because it was not immediately apparent to the officer that the object he felt in Lee's pocket was contraband. *See* Lee's Brief at 13. He states the officer just made a general statement regarding what he felt

during the frisk and "the only evidence of Officer Opalski's experience about narcotics was that the rubber bands he noticed around Mr. Lee's fingers are used to bundle drugs[,]" which Lee claims is insufficient. *Id.* Lee concludes, "As the pat-down of Mr. Lee failed to establish probable cause to establish that he was carrying identifiable contraband, all of the evidence that flowed from the illegal search should have been suppressed as fruit of the poisonous tree." *Id.* at 14.

Our standard of review for a challenge to the denial of a motion to suppress evidence is well settled:

> In reviewing a ruling on a suppression motion, our standard of review is whether the factual findings and the legal conclusions drawn therefrom are supported by the evidence. We are bound by the factual findings of the suppression court supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo*. Further, the reviewing court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the entire record.

*Commonwealth v. Irvin*, 134 A.3d 67, 71 (Pa. Super. 2016) (citations omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1086 (Pa. 2013).

The Fourth Amendment of the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Likewise, the Pennsylvania Constitution promises

- 5 -

citizens of this Commonwealth "shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures[.]" Pa. Const. art. I, § 8. Furthermore, "[t]he reasonableness of a government intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." *Commonwealth v. Fleet*, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted).

It is well-settled that a "forcible stop of a motor vehicle by the police constitutes a second-level seizure, or 'investigative detention,' triggering the constitutional protections of the Fourth Amendment." *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006) (quotation omitted), *appeal denied*, 934 A.2d 71 (Pa. 2007). Moreover, during a routine traffic stop, a police officer may order the driver out of the vehicle for the officer's safety. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1202 (Pa. Super. 2002). However, before an officer may frisk a driver, the Fourth Amendment requires another level of protection:

> It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

***Commonwealth v. Scarborough***, 89 A.3d 679, 683 (Pa. Super. 2014)

(citations omitted), *appeal denied*, 102 A.3d 985 (Pa. 2014).  Furthermore,

> [a]n overt threat by the suspect or clear showing of a weapon is not required for a frisk.  It is well-established that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

***Commonwealth v. Mack***, 953 A.2d 587, 591 (Pa. Super. 2008) (citations

omitted).

Additionally, we note that "[w]eapons found as a result of [a ***Terry***]

pat-down may be seized.  Nonthreatening contraband may be seized only if

it is discovered in compliance with the plain feel doctrine." ***Commonwealth***

***v. Thompson***, 939 A.2d 371, 376 (Pa. Super. 2007), *appeal denied*, 956

A.2d 434 (Pa. 2008).

> [The United States Supreme Court in ***Minnesota v. Dickerson***, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)] held that a police officer may seize nonthreatening contraband detected through the officer's sense of touch during a ***Terry*** frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object.  As ***Dickerson*** makes clear, the plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent.  Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband.  If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

- 7 -

***Commonwealth v. Stevenson***, 744 A.2d 1261, 1265 (Pa. 2000) (some

citations omitted).

Here, the trial court found Officer Opalski possessed the requisite

reasonable suspicion that Lee might be armed and dangerous.   The court

opined:

> Officer Opalski had reasonable suspicion to frisk [Lee] in the present matter because:  (1) [Lee] fled at [a] high rate of speed in response to the officer's presence; (2) the frisk occurred in a high-crime area known for heroin trafficking and gun violence; (3) [Lee] behaved suspiciously upon questioning by the police; and (4) [Lee] had small black rubber bands on his wrist and an observable wad of cash in his pocket.
>
> …
>
> Officer Opalski's stop and frisk of [Lee] was proper as he had reasonable suspicion that [Lee] was armed and dangerous. Several factors would lead a person to reasonably believe [Lee] was armed and that criminal activity was afoot.  Officer Opalski encountered [Lee] after he disregarded a stop sign in an area the officer personally knew to be a high crime neighborhood, specifically known for heroin trafficking and gun violence.  As soon as the police vehicle pulled behind [Lee]'s car, [Lee] sped off at a high rate.  Once [Lee] finally pulled over, Officer Opalski observed [Lee] behaving suspiciously.  He testified that [Lee] was excessively nervous, as indicated by the fact that his voice was trembling, he was breathing heavily and was visibly shaking when he handed over his paperwork.  Further, the officer also observed small black rubber bands on [Lee]'s hand, which he immediately recognized as those used to bundle heroin, and a large wad of cash in his pocket.
>
> In the instant case, it is clear from the totality of circumstances that Officer Opalski reasonably believed his safety was in danger.  The court does not view the situation as an ordinary citizen might, but focuses rather, on the circumstances as seen through the eyes of the trained law enforcement officer. The defendant's irregular behavior alone would be insufficient to

justify the frisk. However, the officer here had particularized knowledge of the types of crime[s] committed in this area, observed indications of drug activity afoot, and witnessed [Lee] attempt to flee from the police. The officer understood the nexus between drug activity and gun violence in this specific neighborhood. There was an objective basis for suspecting both that [Lee] was in the act of committing a drug crime and a reasonable belief that he was armed and dangerous.

Trial Court Opinion, 5/13/2016, at unnumbered 3-5 (citations omitted).

Based on the totality of the circumstances, we find no error in the trial court's analysis. Initially, we note Lee concedes Officer Opalski observed Lee's vehicle failing to stop at a stop sign on July 11, 2015, and therefore, the stop pursuant to a Motor Vehicle Code violation was proper.[3] Moreover, Lee's argument conveniently fails to include the fact that he led the police on a high speed chase after police attempted to stop him for the traffic violation. Furthermore, as the officer testified: (1) the incident took place in a high crime area; (2) Lee had small black rubber bands on his right hand and a wad of cash in his right shorts pocket; and (3) Lee was trembling, breathing heavily, and visibly shaking. We reiterate the purpose of a **Terry** frisk is to protect the police officer conducting the investigation. **See Scarborough**, 89 A.3d at 683. One can easily conclude that based on the combination of the above-stated facts, Officer Opalski possessed reasonable suspicion to believe Lee was armed and dangerous. **See In Re D.M.**, 781 A.2d 1161, 1164 (Pa. 2001) ("unprovoked flight in a high crime area is

---

[3] **See** Lee's Brief at 11 n.2.

sufficient to create a reasonable suspicion to justify a **Terry** stop");[4]

**Commonwealth v. Gray**, 896 A.2d 601, 606 n.7 (Pa. Super. 2006) ("while nervous behavior is a relevant factor, nervousness alone is not dispositive and must be viewed in the totality of the circumstances"); **Commonwealth v. Washington**, 51 A.3d 895, 898 (Pa. Super. 2012) ("nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence").

To the extent, Lee argues there was no testimony about Officer Opalski's experience, other than the officer's reference that the rubber bands he saw around Lee's fingers were used to bundle drugs, we note this Court is "guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have … a weapon." **Commonwealth v. Mack**, 953 A.2d at 590. Furthermore, with respect to Lee's claim that there was no testimony regarding how the officer knew the area was a high drug area, including the number of drug arrests in the area, any drug surveillance the officer had observed, or any arrests that he made,[5] it merits mention that Lee cites no law for the suggestion that an officer must make a certain number of arrests

---

[4]  An earlier version of the Pennsylvania Supreme Court's decision was vacated by the United States Supreme Court. **See Commonwealth v. D.M.**, 743 A.2d 422 (Pa. 1999) ("**D.M. I**"), _vacated_, **Pennsylvania v. D.M.**, 529 U.S. 1126 (2001).

[5]  **See** Lee's Brief at 11-12.

before one may conclude a perpetrator is present in a high crime area. Likewise, our own review has failed to reveal any such case law. Accordingly, we discern no abuse on the trial court's part of finding Officer Opalski's testimony credible.[6]

Lastly, with regard to Lee's argument that even if the frisk was proper, it exceeded the proper scope of **Terry**, **supra**, because it was not immediately apparent to the officer that the object he felt in Lee's pocket

---

[6] Nevertheless, we do note Officer Opalski's familiarity and experience with the area, testifying to the following:

Q.   When you initially observed [Lee] on 77th Street and Overbrook Avenue, were you familiar with that area?

A.  Yes.

Q.  What is that area like?  How would you characterize it?

A.   High narcotics area, specifically heroin.  Just being in close proximity to the counties, these sales are made mostly by either buyers coming in and meeting up on side streets with someone in a vehicle or someone in a house, or the reverse, where the bundles are taken outside the city and sold right in the counties right on the outskirts of Philadelphia.

Q.  Because of the high drug volume, as you just mentioned, are there any other crimes or anything else in that area that you're aware of?

A.  Yeah, up on 75th Avenue, Hartford, shootings all the time, robberies, stuff involving guns.

N.T., 10/22/2015, at 10.

was contraband,[7] we disagree. Officer Opalski specifically testified: "He stepped out of the vehicle and I immediately frisked that left short pocket of his, the mesh pocket. Just from feeling it, right away I recognized there was a bundle of heroin." N.T., 10/22/2015, at 9. As such, in accordance with **Stevenson**, **supra**, Officer Opalski's search and seizure of Lee's person was justified and not outside the scope of **Terry**, **supra**. The officer explicitly testified that it was immediately apparent to him that the object in Lee's pocket was contraband. Accordingly, Lee is not entitled to relief on his suppression claim.

Judgment of sentence affirmed.

Judge Jenkins did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2017

---

[7] **See** Lee's Brief at 13.

- 12 -